[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14336
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-00202-GKS-KRS


ALBERT FLOWERS,
LOTTIE FLOWERS,

Plaintiffs-Appellants,


DONNA MARIE JACKSON,

Interested Party – Appellant,

versus

CITY OF MELBOURNE, DEREK MIDDENDORF,
HOWARD KNAUF, STEVEN SIGETY, Officers,

Defendants-Appellees,

GREGORY COOPER, Officer,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 26, 2014)

Before TJOFLAT, JORDAN, and HILL, Circuit Judges.

HILL, Circuit Judge:

Albert Flowers brought this action against the City of Melbourne and three individual police officers, asserting constitutional claims under § 1983 for alleged excessive force used against him when the officers arrested him. The district court granted summary judgment to all defendants, holding that there was no constitutional violation because the officers did not employ excessive force in the arrest. Flowers appeals. For the following reasons, we shall affirm the judgment of the district court.

Albert Flowers is a sixty-six year old man whom family members described as having mental problems for years. Since filing this action, he has been adjudged incompetent.[1]

The incident giving rise to this action was an altercation between Flowers and his employee, Cornelius Culbert. The material facts regarding this event are

_____

[1] Lottie Flowers and Donna Marie Jackson were appointed plenary co-guardians of Albert Flowers after he filed this action. Accordingly, the district court added them as plaintiffs.

2

not in dispute.[2]  Flowers and Culbert argued over money while on a jobsite.  Each man brandished a knife during this argument.  After the altercation, Culbert, in conjunction with Flowers' nephew Garrick flowers, called the Melbourne police to report the incident.  By the time the first officer arrived, the knives had been put away, but their location was unknown to the officer.  The officer briefly talked to Culbert, and then Culbert identified Flowers as the individual who had pulled the knife on him.  Culbert told the officer that Flowers had "problems."  The officer directed Flowers to approach him.  Flowers walked towards the officer.[3]  Three times the officer ordered Flowers not to come any nearer to him, holding his hand out flat in a "stop" signal to Flowers.  All parties agree that Flowers continued to advance toward the officer and did not verbally respond to his commands.  The officer even stepped away from the direction in which Flowers was approaching him, but Flowers changed course and came towards him.

When Flowers approached to within three to four feet of him, the officer kicked Flowers in the solar plexus and knocked him off his feet.  Although the officer tried to flip him over on his stomach, Flowers struggled and resisted.  The officer struck Flowers three or four times with a closed fist and then succeeded in flipping him onto his stomach.  Although the officer tried to secure Flowers with

---

[2] There is video cam footage of the entire incident that the district court relied upon. Where a videotape of an incident discredits one party's version of events, the court must view the acts in the light depicted by the videotape.  *Scott v. Harris*, 550 U.S. 362, 380-81 (2007)

[3] Garrick testified that at this point he told the officer that Flowers suffered from dementia.

handcuffs, Flowers hid his arms under his chest and continued to resist. At this point, the officer called over his radio for backup. Throughout the physical encounter, the officer ordered Flowers to stop resisting.

When the second officer arrived on the scene, he observed the struggle and drew his Taser. The first officer, however, told him not to use it yet and continued to try to secure Flowers. At this point, two more officers arrived. The officers repeatedly ordered Flowers to stop resisting and to put his hands behind his back, but Flowers continued to struggle. One of the newly-arrived officers attempted to perform a knee spike on the outside of Flowers' right thigh but hit the first officer instead.

At this point, one of the officers tased Flowers. The officer removed the probes from the Taser and employed a "drive stun" for approximately one and one-half seconds.[4] Immediately, the officers were able to secure handcuffs on Flowers. The officers searched Flowers and recovered a knife from his pocket. Flowers seemed to have no idea what had just happened and requested food and to return to work.

Rescue services were called and Flowers was transported to the hospital and then released to police custody. He was taken to the Melbourne Police Department and booked for resisting arrest and assault on a law enforcement officer.

_____

[4] A drive stun is performed after the probes are removed from the Taser. It reduces the amount of force employed on a person in close range.

4

Since the incident, a doctor has diagnosed Flowers as "globally impaired" and opined that the impairment is attributable to dementia and to traumatic brain injury as a result of this incident.

The question before the district court was whether this series of events evidences a constitutional injury. The district court answered the question in the negative and we agree.

It is well-established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In effecting an arrest, officers are permitted to use a level of force that is "necessary in the situation at hand." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010). Officers are entitled to continue to use that force until the suspect thought to be armed is fully secured. *See Crenshaw v. Lister*, 556 F.3d 1238, 1293 (11th Cir. 2009).

In this case, there is no evidence in the record that any of the responding officers had any prior knowledge that Flowers suffered from any mental infirmities. In addition, the record is clear that Flowers was vigorously resisting the officers' efforts to secure him. Flowers ignored the initial officer's commands to stop, as well as all the officers' repeated commands to stop resisting after Flowers was on the ground. The officers had no choice but to regard Flowers as

armed and dangerous, and to make split-second decisions about the amount of force necessary to secure him.[5]  We do not second guess these decisions where the amount of force applied was not grossly disproportional to Flowers' resistance or to the threat he posed to the officers.  *See Ryburn v. Huff*, 132 S. Ct. 987, 991-92 (2012).  In these circumstances, it cannot be concluded that the officers' actions were unreasonable as a matter of law.  Therefore, the officers are entitled to qualified immunity as to Flowers' claims against them.

Inasmuch as the district court correctly concluded that none of the officers violated Flowers' constitutional right to be free from excessive force, the City of Melbourne cannot be liable for having an unconstitutional policy, custom or practice that encouraged the officers to violate Flowers' rights.  Therefore, the district court correctly granted it summary judgment as well.

Accordingly, the judgment of the district court granting summary judgment to defendants as to all of plaintiffs' claims is

AFFIRMED.

---

[5] The officers knew that Flowers had brandished a knife against Culbert, and, therefore, had reason to believe, correctly as it turned out, that he still had it.

6