[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12875
Non-Argument Calendar
_____

D.C. Docket No. 8-12-cv-00550-MSS-AEP


PEDRO QUILES, SR.,
as personal representative of the Estate of Pedro Quiles, Jr.,
PEDRO QUILES, SR.,
on behalf of himself individually,
PEDRO QUILES, SR.,
on behalf of minors, P.Q-S and B.Q., survivors,

Plaintiffs-Appellees,

versus

CITY OF TAMPA POLICE DEPARTMENT, et al.,

Defendants,

SCOTT SAVITT, individually and his capacity as an
Officer of the City of Tampa,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 5, 2015)

Before JULIE CARNES, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, Defendant Officer Scott Savitt challenges the district court's denial of his motion for summary judgment. Officer Savitt contends that he is entitled to qualified immunity from Plaintiff's 42 U.S.C. § 1983 action. Reversible error has been shown; we reverse the denial and remand the case.

This case arises from the 2011 fatal shooting of Pedro Quiles, Jr. during a traffic stop. On the day of the incident, Officer Cain stopped Quiles for driving recklessly. When asked for his identification, Quiles gave Officer Cain a driver's license with the name "Alex Perez." After discovering that Perez's driver's license was suspended and that Perez had earlier citations for traffic violations, Officer Cain decided to arrest Quiles, whom Officer Cain believed to be Perez. Before

2

Officer Cain initiated the arrest, Officer Savitt responded to the scene to serve as back up.

When Officers Cain and Savitt asked Quiles to step out of the car, Quiles started to run. But Officers Cain and Savitt grabbed Quiles and pulled him back toward the car. Quiles then struggled physically with Officer Cain. The two men fell to the ground (with Quiles on top of Officer Cain) and continued to struggle for a few seconds. Officer Cain then got up into a kneeling position and, while holding onto Quiles's shirt, delivered a knee strike to Quiles's head. Quiles freed himself from Officer Cain's grasp by pulling backwards out of Quiles's shirt, and he started to run away. Officer Savitt then fired two shots at Quiles; Quiles was hit and died as a result.[1]

Although the parties disagree about what was said exactly during the altercation, the parties agree that, when Officer Cain and Quiles were fighting on the ground, one of the officers began saying something about a gun. Viewed in the light most favorable to Plaintiff, the evidence shows that one of the officers began saying "watch your gun, watch your gun," while it appeared as though that officer (Officer Savitt) was trying to protect the other officer's (Officer Cain's) gun. And,

---

[1] The events leading up to the shooting were captured on Officer Cain's dash camera, but no audio recording exists. About 17 seconds elapsed from the time Quiles first exited the car to the moment that Officer Savitt fired his weapon.

according to one witness, neither officer warned Quiles that they would shoot if he did not stop.

Plaintiff, representing Quiles's estate, filed this civil action alleging that Officer Savitt used excessive force, in violation of the Fourth Amendment.[2] The district court denied Officer Savitt's motion for summary judgment: a motion based on qualified immunity. From the record, the district court determined that Officer Savitt believed reasonably that Quiles had taken Officer Cain's gun during the struggle and that Savitt had probable cause to believe Quiles -- "armed and dangerous," to use the district court's words -- posed a threat of serious physical harm to the officers and to others. But the district court denied qualified immunity based solely on the court's determination that the officers failed to warn Quiles about the possible use of deadly force against him and that such a warning was feasible.[3]

We review de novo a district court's denial of summary judgment based on qualified immunity. Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). In

---

[2] Plaintiff also named as Defendants Officer Cain, the Chief of Police, and the City of Tampa. These Defendants are not parties to this appeal.

[3] The parties dispute whether the officers in fact warned Quiles about the use of deadly force. Viewing the evidence in the light most favorable to the Plaintiff -- as the district court was required to do for purposes of ruling on a summary judgment motion -- the court concluded that no warning was issued. The court then treated the officers' testimony that they gave a warning as a concession that a warning was in fact feasible. On appeal, Officer Savitt challenges the district court's treatment of his testimony as a "concession." Because we decide the appeal on other grounds, we do not decide this issue.

4

determining whether summary judgment is appropriate, we must view all the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  Id.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).  To avoid summary judgment based on qualified immunity, Plaintiff must show both that Officer Savitt violated a federal right and that the right was already clearly established when Officer Savitt acted.  See id.  "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law."  Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2085 (2011).

A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Id. at 2083 (quotations omitted).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  Id.; Lane v. Franks, 134 S.Ct. 2369, 2374 (2014).  We mean beyond debate given the circumstances: "the specific context of the case."  See Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001).

5

"Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (quotations omitted). And "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 109 S.Ct. 1865, 1871-72 (1989).

No precise test or "rigid preconditions" exist for determining when an officer's use of deadly force is excessive. See Scott v. Harris, 127 S.Ct. 1769, 1777 (2007). Instead, in determining whether the Fourth Amendment was violated, "we must still slosh our way through the factbound morass of 'reasonableness.'" Id. at 1778.

Thus, in deciding the merits of a claim of excessive force, we must determine whether, given all the facts and circumstances of a particular case, the force used was "reasonable" under the Fourth Amendment. Graham, 109 S.Ct. at 1871-82. "In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009). We

6

may also consider, as a factor, "not only the number of lives at risk, but also their relative culpability." Scott, 127 S.Ct. at 1778.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 109 S.Ct. at 1872. And we must allow "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. "We are loath to second-guess the decisions made by police officers in the field." Vaughan v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003).

The evidence, viewed in the light most favorable to Plaintiff, shows that Officer Savitt violated no constitutional right when he shot Quiles: the officer's act was objectively reasonable. Quiles resisted physically, actively and aggressively the officers' efforts to arrest him by twice attempting to run away and by fighting with Officer Cain. When Quiles pulled away from Officer Cain's grasp and began to run away for a second time, Officer Savitt believed reasonably (although mistakenly) that Quiles had stolen and was still in possession of Officer Cain's gun. [4]

---

[4] Plaintiff does not challenge the district court's determination that Officer Savitt believed reasonably that Quiles had, in fact, taken Officer Cain's gun during the struggle.

An objective officer in Officer Savitt's situation could have believed reasonably that Quiles -- armed with a gun -- posed a threat of serious physical injury to the officers and to others. Quiles had shown himself willing to use physical force against an officer to avoid arrest. And nothing indicated that Quiles -- who had started to run away with what the officers believed reasonably to be a police-issue firearm taken by force from an officer -- had stopped resisting the officers' efforts to seize him or would otherwise refrain from using force to avoid arrest again. Faced with a "tense, uncertain, and rapidly evolving" situation, Officer Savitt made a split-second decision to shoot Quiles to avoid the risk of serious injury to either of the officers or to bystanders. Given the circumstances, we cannot say that Officer Savitt's decision was unreasonable in the Fourth Amendment sense. Furthermore, we feel certain that it was not clearly established -- as a matter of law -- at the time of the shooting that Officer Savitt acted unreasonably in the Fourth Amendment sense.

Although Quiles was running away from the officers when he was shot and had not threatened definitely the officers with a gun, "the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." See Long v. Slaton, 508 F.3d 576, 581 (11th Cir. 2007); see also Montoute v. Carr, 114 F.3d 181, 185 (11th Cir. 1997) (even though suspect was running away and never pointed shotgun at anyone, the

8

officer was entitled to qualified immunity because the officer could have believed reasonably that the suspect "might wheel around and fire his shotgun again, or might take cover . . . and shoot at the officers or others."). Officers need not "wait and hope for the best." Jean-Baptiste, 627 F.3d at 821 (quotation omitted).

That Officer Savitt was mistaken -- reasonably mistaken -- about Quiles having stolen Officer Cain's gun does not matter either on the merits or for purposes of immunity. See Penley v. Weippert, 605 F.3d 843, 851, 854 (11th Cir. 2010) (concluding that no Fourth Amendment violation occurred when officer believed reasonably that the suspect -- who was armed with a realistic-looking toy gun -- posed a threat of serious physical harm to the officers and to nearby students); Garczynksi v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009) (concluding officer was entitled to qualified immunity when decision to shoot suspect was based in part on a mistaken, but reasonable, belief that the suspect was about to drive away).

In denying Officer Savitt's motion for summary judgment, the district court -- citing Tennessee v. Garner, 105 S.Ct. 1694 (1985), and this Court's decision in Acoff v. Abston, 762 F.2d 1543 (11th Cir. 1985) -- relied solely on its determination that the officers issued no warning to Quiles about the potential use of deadly force against him. Although a warning is one factor that weighs in favor of reasonableness, see Garner, 105 S.Ct. at 1701, the Supreme Court has stressed

9

that "Garner did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'" See Scott, 127 S.Ct. at 1777. Instead, reasonableness is determined based on all the facts and circumstances of each individual case. Graham, 109 S.Ct. at 1872.

Given the teaching of the post-1985 development of the law (all that matters is reasonableness), the district court's focus on our opinion in Acoff is misplaced. In Acoff -- decided only a few months after Garner was decided -- we treated Garner as having established a "standard for defining the reasonable use of deadly force to seize a person." See Acoff, 762 F.2d at 1547. We described the Garner standard as containing three distinct elements, one of which was the issuance of a warning when feasible. See id. In explaining why a directed verdict for defendant was improper in that case, we relied on a number of things, including our reasoning that "[t]he jury was certainly entitled to conclude that a warning was feasible and this alone would have established a violation of the legal standard." See id. at 1548. But, in the light of the Supreme Court's later clarification in Scott of the Garner legal standard, we now know and had published precedents by 2011 that an officer's failure to issue a seemingly feasible warning -- at least, to a person appearing to be armed -- does not, in and of itself, render automatically unreasonable the use of deadly force. See Penley, 605 F.3d at 854 n.6 (quotations and alterations omitted) (rejecting the argument that Garner mandates the issuance

10

of a warning, and explaining that this Court has "declined to fashion an inflexible rule that, in order to avoid civil liability, an officer must always warn his suspect before firing -- particularly where such a warning might easily have cost the officer his life."); Carr v. Tatangelo, 338 F.3d 1259, 1269 n. 19 (11th Cir. 2003) (same, adopting the Fourth Circuit's reasoning in McLenagan v. Karnes, 27 F.3d 1002 (4th Cir. 1994)).

Given the facts and circumstances of this case, Officer Savitt's use of deadly force was not outside the range of reasonable conduct under the Fourth Amendment. He faced what was reasonably perceived as a grave danger. An objectively reasonable officer possessing the same knowledge as Officer Savitt could have believed that the use of deadly force against Quiles was justified, to prevent serious injury to the officers and to bystanders. The Constitution was not violated. Moreover, given the circumstances and the train of precedents, we are even more confident that Officer Savitt, in 2011, violated no clearly-established constitutional right of which a reasonable person would have known; as a matter of law, he personally is entitled to immunity.

REVERSED AND REMANDED.

11