[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13619

_____

D.C. Docket No. 9:13-cv-80912-DMM

KAREN PEREZ,
as Personal Representative of the Estate of
Victor Arango, Deceased,

Plaintiff - Appellee,

versus

MICHAEL SUSZCZYNSKI,
a Palm Beach County Police Officer,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 12, 2016)

Before MARCUS and WILSON, Circuit Judges, and SCHLESINGER,[*] District Judge.

WILSON, Circuit Judge:

This interlocutory appeal arises from the fatal shooting of Victor Arango by defendant-appellant Michael Suszczynski, a Palm Beach County Sheriff's Deputy, and the subsequent 42 U.S.C. § 1983 action for excessive force brought by plaintiff-appellee Karen Perez, the personal representative of Arango and the administrator of his estate (the Estate). Suszczynski appeals the district court's denial of his summary judgment motion, asking us to reverse the district court and order judgment in his favor on qualified immunity grounds.

Given that Suszczynski's appeal presents a disputed issue of law, we have jurisdiction to review the district court's legal determination that Suszczynski is not entitled to qualified immunity. After considering the parties' briefs, benefitting from oral argument, and thoroughly reviewing the record on appeal, we hold that the district court properly denied summary judgment. Taking the facts in the light most favorable to the Estate, as we must at this stage, Suszczynski is not entitled to qualified immunity. The Estate proffered evidence that Suszczynski fatally shot Arango in the back while Arango was compliant and non-resisting, which

---

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

constitutes excessive force and violates clearly established law.  Therefore, we affirm.

## I.

We review de novo the district court's denial of summary judgment and determination that Suszczynski is not entitled to qualified immunity.  *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

As an initial matter, the Estate asserts that the sole issue presented is fact-based and, for that reason, challenges our jurisdiction to consider this interlocutory appeal.  A district court's order denying a defendant's motion for summary judgment on qualified immunity grounds is immediately appealable despite there being disputed issues of fact, unless the *only* issue on appeal is the "sufficiency of the evidence relative to the correctness of the plaintiff's alleged facts."  *See Koch v. Rugg*, 221 F.3d 1283, 1294 (11th Cir. 2000).  Here, although Suszczynski devotes some arguments to challenging the factual basis for the denial of summary judgment, Suszczynski does advance an appealable issue—namely, whether he could have reasonably believed his fatal shooting of Arango was lawful under clearly established law, thus entitling him to qualified immunity.  *See Behrens v. Pelletier*, 516 U.S. 299, 312–13, 116 S. Ct. 834, 842 (1996); *Cottrell v. Caldwell*, 85 F.3d 1480, 1485 (11th Cir. 1996) (interlocutory jurisdiction exists if the issues

3

on appeal are based "even in part on a disputed issue of law"). Consequently, we may properly entertain the appeal.

At this stage in the proceedings, we view all evidence and factual inferences in the light most favorable to the non-moving party—here, the Estate—and we "resolve all issues of material fact" in the Estate's favor. *See Lee*, 284 F.3d at 1190. We must review the evidence in this manner "because the issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Id.* (internal quotation marks omitted and alteration adopted). Accordingly, what are considered the "facts" may not turn out to be the "actual" facts if the case goes to trial; rather, they are the "facts" at this stage of the proceedings. *See id.* (internal quotation marks omitted); *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). Due to the number of witnesses at the scene, there are numerous, varying accounts of what happened. However, under the appropriate standard, the record supports the following factual account:

In the pre-dawn hours of June 7, 2012, deputies from the Palm Beach County Sheriff's Office were called to respond to an altercation between two women at a sports bar. Ten to twenty people were in the parking lot when the deputies arrived. One of these people was Arango, who was at the rear of a pickup truck. Deputy Thomas Hannigan arrived on the scene first. In two separate police

4

cars, Suszczynski and Deputy Jacob Frey arrived at the bar's parking lot at the same time. The deputies told everyone to get down and put their hands in the air. Arango then got on the ground or was thrown to the ground by Hannigan. After going to the ground, Arango made no attempt to get up or resist police restraint; instead, he remained compliant and prostrate on his stomach, with his hands behind his back. A deputy remarked that Arango had a gun. One of the deputies removed a handgun from Arango's waistband and threw it "pretty far," about ten feet.[1] Suszczynski then shot Arango twice in the back, in a manner one witness described as "execution-style," from approximately twelve to eighteen inches away.

The legal question of whether Suszczynski is entitled to qualified immunity must be determined "under th[is] version of the facts." *See Lee*, 284 F.3d at 1190 (internal quotation marks omitted). Accepting this version of events, we hold that no reasonable officer would have shot Arango while he was lying prone, unarmed, and compliant. As set forth below, this conduct violated Arango's Fourth Amendment right to be free from excessive force, and clearly established law gave

---

[1] While it is undisputed that Arango's gun was found on the ground, away from his body after the shooting, the parties dispute when and how Arango's gun was removed, including whether Suszczynski or another deputy removed Arango's gun prior to shooting Arango, or whether the gun was dislodged in a different manner, such as from baton strikes by Suszczynski. However, at least two witnesses stated that a deputy did remove the gun prior to Suszczynski shooting Arango. These are the facts that we must accept as true because, at this stage in the proceedings, we "resolve all reasonable doubts about the facts in favor of the [Estate]." *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007) (internal quotation marks omitted).

5

Suszczynski full and fair warning that the use of deadly force would be unconstitutional under these circumstances.

## II.

Qualified immunity protects officers engaged in discretionary functions from civil liability only if the officers' actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Here, because Suszczynski was attempting to arrest or restrain Arango, Suszczynski was "clearly engaged in a discretionary capacity," which means qualified immunity could attach to his actions. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005); *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Thus, to proceed on its claim, the Estate must establish that Suszczynski is not entitled to qualified immunity by showing that the facts alleged make out a violation of a constitutional right and that the constitutional right was clearly established at the time of Suszczynski's conduct. *See Hadley*, 526 F.3d at 1329.

We conduct a two-part inquiry to assess whether the Estate met this burden.[2] First, we consider whether, taken in the light most favorable to the Estate, the facts alleged show Suszczynski's conduct violated a constitutional right. *See Lee*, 284

---

[2] Addressing the two prongs of the qualified immunity test in this order "will best facilitate the fair and efficient disposition of [the] case." *See Pearson v. Callahan*, 555 U.S. 223, 242, 129 S. Ct. 808, 821 (2009).

6

F.3d at 1194.  Then, "[i]f a constitutional right would have been violated under the *plaintiff's* [here, the Estate's] version of the facts, the court must then determine whether the right was clearly established."  *See id.* (internal quotation marks omitted).  Where, as in this case, the district court did not state the facts upon which it based its decision to deny summary judgment, we conduct our own review of the record to determine what facts the district court likely assumed.  *See Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

## A. Violation of a Constitutional Right

We first determine whether the facts alleged show the officer's conduct violated a constitutional right.  The Estate claims that Suszczynski violated Arango's Fourth Amendment right to be free from excessive force when he fatally shot Arango.  *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 1870–71 (1989) (holding that the Fourth Amendment's freedom from unreasonable searches and seizures includes the right to be free from excessive force).  An officer may constitutionally use deadly force when the officer:

> (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly force, if feasible.

7

*Morton*, 707 F.3d at 1281 (internal quotation marks omitted).  Taking the evidence in the light most favorable to the Estate, none of these factors were met, and it is clear that Suszczynski violated Arango's Fourth Amendment rights by using an objectively unreasonable amount of force.

First, Suszczynski had no probable cause to believe Arango committed any crime at all, "let alone a serious crime involving the infliction or threatened infliction of serious physical harm," or that he was a threat.  *See id.* at 1281–82.  The call to which the officers responded pertained to two women fighting, and Arango was simply one of the bystanders in the parking lot, who went to the ground when told to do so by the arriving officers.  The Estate's witnesses testified that, at the time of the shooting, Arango was subdued, compliant, and on the ground.  *See Hadley*, 526 F.3d at 1330 ("[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.").

Second, there is no indication that Arango actively resisted or attempted to flee.  *See Lee*, 284 F.3d at 1197–98.  Witnesses for the Estate testified that Arango was on his stomach with his arms restrained.  Crediting their account, as we must, Suszczynski could not have reasonably believed he had to shoot Arango to prevent his escape.  Third, it is undisputed that Suszczynski gave no warning before using deadly force.  *See Morton*, 707 F.3d at 1282.  Accordingly, on this record, a

reasonable jury could find Suszczynski's use of force "unnecessary and disproportionate," and thus excessive. *See Lee*, 284 F.3d at 1198.

In response, Suszczynski asserts that his use of deadly force was constitutionally permissible because *he* believed deadly force was warranted under the circumstances. For instance, according to Suszczynski, his belief that his life or his fellow deputy's life was in danger is an undisputed fact that demonstrates his actions were reasonable. However, this argument misunderstands the relevant standard. We must engage in an objective inquiry to determine the reasonableness of an officer's actions in an excessive force case: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *See Graham*, 490 U.S. at 397, 109 S. Ct. at 1872. Accepting Suszczynski's argument would require us to eschew this longstanding rule and determine "reasonableness" based on his subjective beliefs.[3] Suszczynski's beliefs about his life or Hannigan's

---

[3] In making this argument, Suszczynski confuses the objectively reasonable officer test with the summary judgment standard for the non-moving party. We have held that, in considering the reasonableness of an officer's decision to use deadly force, "[t]he only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). Here, Suszczynski would have us apply this standard and find dispositive his testimony that Arango was fighting with Hannigan and he thought Arango was reaching for Arango's gun, or potentially could have grabbed Hannigan's gun. However, that testimony is contradicted by the Estate's witnesses, who claim that a deputy threw Arango's gun several feet away before shooting him and that Arango was on the ground—not near either gun—when he was shot. We have never suggested that, when the evidence is disputed or contradictory, we "use the facts known to the officer" by accepting the officer's version of the facts and viewing the evidence in the light most favorable to the officer. That is simply the wrong standard.

life being in danger are just that—his beliefs.  They are not "facts and circumstances" that we may rely on to objectively determine the reasonableness of his actions.  *Cf. id.*  Moreover, the reasonable officer standard does not mean we give the challenged officer's self-serving testimony more weight, and Suszczynski's "good intentions" cannot "make an objectively unreasonable use of force constitutional."  *See id.*

Suszczynski also defends his use of force by heavily emphasizing that Arango had a gun.  *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) ("The law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." (internal quotation marks and brackets omitted)).  The parties agree that Arango was carrying a handgun at some point during the incident.  But the mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force and shield an officer from suit.  Where the weapon was, what type of weapon it was, and what was happening with the weapon are all inquiries crucial to the reasonableness determination.  *See id.* (deadly force justified when armed suspect of violent crimes confronted officer in an ambush); *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997) (qualified immunity applies where undisputed evidence showed plaintiff disregarded officer's command to stop and was fleeing with a sawed-off shotgun, mere possession of which is a felony under Florida law); *see*

10

*also Lundgren v. McDaniel*, 814 F.2d 600, 602–03 (11th Cir. 1987) (finding presence of a handgun not dispositive and denying qualified immunity).

Again, we must determine whether the officer's use of deadly force was objectively reasonable. This standard depends on whether the "suspect poses a threat of serious physical harm," with emphasis on the level and immediacy of that threat. *See Morton*, 707 F.3d at 1281. Although the presence or absence of a weapon is a factor in this analysis, it is merely one element in the calculus; the ultimate determination depends on the risk presented, evaluating the totality of the circumstances surrounding the weapon.[4] In considering this question, we, of course, take into account the fact that guns are different when it comes to the level and immediacy of the threat—for instance, a person standing six feet away from an officer with a knife may present a different threat than a person six feet away with a gun. *See Mercado*, 407 F.3d at 1154–55, 1157–58 (finding an officer was not entitled to qualified immunity at the summary judgment stage even after using a "less lethal" weapon against an individual armed with a knife because the individual did not pose an immediate threat). However, a person who at one time

---

[4] For example, we have found that defendant officers were not entitled to qualified immunity for the fatal shooting of an individual even where that individual had resisted arrest and struck the officers multiple times, because at the time of the shooting he was "retreating, apparently unarmed, and outside of striking distance." *Salvato v. Miley*, 790 F.3d 1286, 1293–94 (11th Cir. 2015). Similarly, we have found that an officer who deployed a "less lethal" weapon to the head of a suicidal individual was not entitled to qualified immunity because the individual, although armed with a knife, did not make "any threatening moves toward the police" and "was not actively resisting arrest." *See Mercado*, 407 F.3d at 1157, 1160–61.

had a gun, but clearly has had the gun removed, is no different than any other unarmed individual. Here, witnesses testified that Arango's handgun had been removed from his person when he was shot. The use of lethal force under such circumstances—after any potential threat had been neutralized—is objectively unnecessary and disproportionate.

Suszczynski's remaining arguments are effectively challenges to the Estate's version of events and the credibility of the Estate's witnesses. Accordingly, it is worth noting that, if the Estate's version of the facts was "inherently incredible and could not support reasonable inferences sufficient to create an issue of fact," *Riley v. City of Montgomery*, 104 F.3d 1247, 1251 (11th Cir. 1997), we would reject it. As the Supreme Court has instructed, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (finding appellate court erred in affirming denial of qualified immunity in an interlocutory appeal because the plaintiff's version of events was not supported by the record).

Here, however, there is no evidence clearly contradicting the Estate's version of the facts. Suszczynski offers no evidence that "so utterly discredit[s] [the Estate's witnesses'] testimony that no reasonable jury could believe [the

12

witnesses]." *See Morton*, 707 F.3d at 1284. Instead, "[t]he record plainly yields sharply dueling accounts of what happened and why the critical shots were fired"; it does not "utterly discredit" the Estate's account. *See id.* at 1285. Thus, we are required to credit the Estate's account at this stage in the proceedings, accepting the evidence of the Estate and drawing all justifiable inferences in its favor.[5] And, in the Estate's version of events, Suszczynski shot a compliant, prostrate man in the back "while having no reason to believe that the man would place anyone's safety in danger." *See id.* at 1282. No reasonable officer would have used deadly force under these circumstances. Therefore, Suszczynski's use of force against Arango—shooting Arango while he was prostrate and compliant on the ground— violated Arango's Fourth Amendment right to be free from excessive force.

## B. Clearly Established at the Time of the Incident

Although we conclude that Suszczynski violated Arango's constitutional right to be free from excessive force, qualified immunity will still attach unless that

---

[5] By way of comparison, in *Scott*, video tape evidence plainly contradicted the plaintiff's version of the facts: that the plaintiff was driving carefully and posed no threat at the time the officer used force. *See Scott*, 550 U.S. at 380–81, 127 S. Ct. at 1776 (plaintiff's version was "visible fiction" because that "version of events was so utterly discredited by the record that no reasonable jury could have believed him"). Here, there is no "blatant[] contradict[ion]." *See id.* at 380, 127 S. Ct. at 1776. Suszczynski only offers the deputies' versions of events, and even the deputies gave inconsistent statements regarding what happened. Of course, a fact-finder may later determine that the deputies' versions are more credible, at which point Suszczynski will get a second chance to raise his entitlement to qualified immunity after the fact-finder resolves these factual disputes. At this stage, however, we may not simply reject the Estate's version of the facts. *See Tolan v. Cotton*, 572 U.S. __, __, 134 S. Ct. 1861, 1867–68 (2014) (per curiam) (noting that a court may not "credit[] the evidence of the party seeking summary judgment and fail[] . . . to acknowledge key evidence offered by the party opposing that motion").

13

right was clearly established at the time Suszczynski violated it.  *See Lee*, 284 F.3d at 1198.  A right is "clearly established" if it would have been apparent to every reasonable officer in Suszczynski's position that his use of force was unlawful. *See id.* at 1199.  There are three ways in which the Estate may show that the right violated was clearly established: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."  *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).  The "salient question" is whether the state of the law at the time of the incident gave Suszczynski "fair warning" that his conduct was unlawful.  *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002).

Arango's Fourth Amendment right to be free from the use of deadly force when compliant and nonresistant was clearly established well before the night of the shooting in 2012.  Case law from this court and the Supreme Court clearly established this constitutional right, and, even in a total absence of case law, Suszczynski had fair warning that his actions were unlawful.  The Supreme Court identified a constitutionally protected right to be free from excessive force as early as 1985.  *See Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694 (1985).  The Court

14

explained that deadly force is not justified "[w]here the suspect poses no immediate threat to the officer and no threat to others"; the Court definitively held that, as relevant here, "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *See id.* at 11, 105 S. Ct. at 1701.

In addition, we have repeatedly stated that "the use of deadly force against a non-resisting suspect who posed no danger violates a suspect's Fourth Amendment right to be free from excessive force." *See, e.g.*, *Morton*, 707 F.3d at 1283 (citing *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003)); *Mercado*, 407 F.3d at 1160 (noting that it is a "clearly established principle that deadly force cannot be used in non-deadly situations"). Our case law clearly establishes that the use of force against an arrestee who, *inter alia*, is not a threat, has not exhibited aggressive behavior, and has not actively resisted arrest is excessive. *See Lee*, 284 F.3d at 1198–1200; *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (2000); *see also Smith v. Mattox*, 127 F.3d 1416, 1418, 1420 (11th Cir. 1997) (per curiam) (denying qualified immunity to an officer who broke the arm of individual who "docilely submitted" to the officer's request to "get down," even though the individual previously resisted arrest (internal quotation marks omitted)).

Suszczynski was thus on fair notice at the time of the shooting from both the Supreme Court and Eleventh Circuit that the use of deadly force has constitutional limits, and that his use of deadly force would be justified only if a reasonable

15

officer in his position would believe Arango posed an immediate threat of serious physical harm. Under the Estate's version of events, these circumstances did not exist: witnesses for the Estate testified in their depositions that Arango was subdued, unarmed, and not resisting arrest when Suszczynski fatally shot him.

In fact, the facts alleged reflect behavior so inherently violative of the Fourth Amendment that it should be obvious to any reasonable officer that this conduct was unlawful. The unprovoked shooting of a compliant individual is "conduct [that] lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct [should have been] readily apparent to the official." *See Lee*, 284 F.3d at 1199. Indeed, this conduct lies "so far beyond the hazy border between excessive and acceptable force that [Suszczynski] had to know he was violating the Constitution." *See Smith*, 127 F.3d at 1419. Even in the absence of the aforementioned precedent, the unlawfulness of Suszczynski's alleged actions would be apparent to any reasonable officer—the deadly force used was "grossly disproportionate." *See Lee*, 284 F.3d at 1199. Accordingly, qualified immunity does not apply.

## III.

At this stage in the litigation, Suszczynski is not entitled to qualified immunity on the Estate's excessive force claim. Our holding today does not mean Suszczynski is entirely precluded from enjoying qualified immunity; there are

16

numerous disputed issues of material fact, which a fact-finder may ultimately resolve in his favor. *See Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir. 1992) (per curiam). But this court cannot resolve those issues on appeal. Taking the evidence in the light most favorable to the Estate, we hold as a matter of law that the lethal force used by Suszczynski against Arango was obviously unreasonable and violated clearly established law. Therefore, the district court's order denying Suszczynski's motion for summary judgment is hereby

**AFFIRMED.**