[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14530
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-14367-DMM


DUDLEY TEEL,

                                                      Plaintiff-Appellant,

versus

DEPUTY SHERIFF JONATHAN LOZADA,
in his individual capacity,
SHERIFF DERYL LOAR,
in his individual and official capacities,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 23, 2020)

Before MARTIN, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Officer Jonathan Lozada of the Indian River County Sheriff's Office responded to a mental health crisis call at Dr. Dudley Teel's residence.  Dr. Teel's wife, Susan, was threatening to kill herself.  After a brief encounter, Officer Lozada fatally shot Mrs. Teel.  Dr. Teel, as the personal representative of his wife's estate, brought a claim under 42 U.S.C. § 1983 against Officer Lozada for excessive use of force.  He brought a *Monell* claim[1] against Sheriff Deryl Loar and state-law wrongful death claims against both defendants.

Dr. Teel now appeals the district court's order granting summary judgment in favor of Officer Lozada and Sheriff Loar on the ground that Officer Lozada's use of force was reasonable under the circumstances.  Viewing the facts in the light most favorable to Dr. Teel, we disagree with that determination.  We hold that the circumstances of Officer Lozada's encounter with Mrs. Teel violated Mrs. Teel's clearly established constitutional right to be free from the excessive use of force.  We therefore reverse the district court's judgment in part, vacate it in part, and remand for further proceedings.

---

[1] *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

2

## I.    FACTUAL BACKGROUND

The facts elicited during discovery are as follows.[2]  The Indian River County Sheriff's Office dispatch notified officers that a 911 call came through describing a person—later determined to be Mrs. Teel—who had "possibly cut herself," was "under the influence of alcohol," and had a knife.  Doc. 39-4 at 2–3.[3]  She had in fact cut herself:  Dr. Teel, an emergency medical doctor, testified that he discovered his wife in their master bedroom, where she had slit both of her wrists, "was bleeding out," and needed to go to the hospital.  Doc. 46-10 at 78.

Officer Samuel Earman, on patrol in the area, responded as the primary officer en route, and Officer Lozada, also on patrol at the time, responded that he would provide backup.  Officer Lozada, however, arrived first to the Teels' home, and he did not wait for Officer Earman to arrive.  (Officer Earman would arrive minutes after Officer Lozada and hear gunshots from the threshold of the house.)  Officer Lozada knocked on the front door.  When no one answered, he opened the front door, which was unlocked, and saw Dr. Teel walking down the stairs towards the door.  He and Dr. Teel spoke for about a minute.  Dr. Teel told Officer Lozada

---

[2] On review of a motion for summary judgment, we view the facts in the light most favorable to the plaintiff.  *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).  In recounting the facts, we note where facts are disputed and at this stage resolve the disputes in Dr. Teel's favor.  We emphasize, however, "that the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000) (internal quotation marks omitted).

[3] "Doc." numbers refer to the district court's docket entries.

that his wife was upstairs, was trying to kill herself, was under the influence of narcotics and/or alcohol, and was armed with a knife that Dr. Teel had unsuccessfully attempted to take away.  Officer Lozada observed what he believed to be blood on Dr. Teel's shirt.  He understood that Mrs. Teel had not tried to harm Dr. Teel.  Officer Lozada concedes that before encountering Mrs. Teel, he had no objective facts indicating that she was a danger to anyone other than herself.

Officer Lozada then entered the home, told Dr. Teel to stay downstairs, and climbed the stairs toward the master bedroom.  As Officer Lozada advanced up the stairs, he drew his gun and held it to his chest.

When Officer Lozada reached a sitting room at the top of the stairs, he saw Mrs. Teel in the next room, the master bedroom, wearing a bathrobe and lying quietly on a canopy bed with her feet dangling from it.  Between Officer Lozada and Mrs. Teel was the doorway to the bedroom, a chest at the foot of the bed, and most of the bed, which had large round columns supporting the canopy.  Officer Lozada paused for 2 to 3 seconds at the top of the stairs and then walked to the doorway of the bedroom.  He observed that Mrs. Teel's hands were tucked behind her back.  At this point, Officer Lozada testified, he still knew of no fact

4

suggesting that Mrs. Teel would present a threat to anyone but herself. Officer Lozada did not observe any blood on Mrs. Teel's body.[4]

Officer Lozada announced himself and said in an assertive tone, "Susan, Sheriff's Office. Let me see your hands." Doc. 29-1 at 10. Mrs. Teel complied with the order. She brought both hands from behind her back, revealing a kitchen knife with an eight-inch blade in her left hand. Mrs. Teel was 60 years old, 5'2" tall, and 120 pounds. She stood from the bed and, standing with the canopy bed between her and officer Lozada, held the knife with the blade pointed down over her head. Officer Lozada took "two or three" steps inside the bedroom. Doc. 39-1 at 112. Mrs. Teel remained on the other side of the bed from Officer Lozada for 8 to 10 seconds. During that time, he gave her no instruction or warning. He said nothing to her at all.

---

[4] Officer Lozada testified that nothing about the scene he encountered upstairs indicated that Mrs. Teel was in physical distress. Credibility determinations are for a jury to make, but we cannot help but notice that some of Officer Lozada's statements seem inconsistent with the rest of the evidence, including his own version of the events. Mrs. Teel had cut her wrists and neck and was bleeding so severely that her husband, an emergency medical doctor, believed she might die from blood loss. An Indian County Sheriff's Office investigator who was at the scene immediately following the shooting observed that "blood was all over the rug and couch" in the sitting room, Doc. 39-5 at 3, a fact that is consistent with Dr. Teel's recollection that after cutting herself, Mrs. Teel ran from the bedroom to the sitting room couch, where she sat while he called for help. Officer Lozada testified that he observed the couch as he walked through the sitting room en route to the bedroom. He shot Mrs. Teel in the bedroom and possibly again in the doorway between the bedroom and sitting room, and she fell in the doorway, making it exceptionally unlikely that the sitting room couch was covered with blood from the shooting alone. Moreover, Officer Lozada testified that he did not look at Mrs. Teel's arms during the encounter and so did not observe blood on them, despite also testifying that Mrs. Teel walked towards him holding a knife over her head.

5

After the 8 to 10 second pause, Mrs. Teel began walking "gradual[ly]" in Officer Lozada's direction. *Id.* at 102.  The sequence of events that occurred next is not precisely clear, but it is undisputed that the events happened quickly.  As Mrs. Teel was walking around the bed, she said "Fuck you.  Kill me." Doc. 39-2:17.  Officer Lozada then pointed his gun at Mrs. Teel.  He also took a step back and radioed emergency traffic reporting that Mrs. Teel had a knife.  Mrs. Teel said, "Come on, just do it." *Id.* at 9, 53.  Officer Lozada then said to Mrs. Teel, "don't come." Doc. 39-4 at 3.  By this point, only four minutes had passed since Officer Lozada's arrival at the Teel residence.

Mrs. Teel never made a sudden movement or ran or lunged at Officer Lozada.  Nor did she point the knife in his direction.  Officer Lozada never instructed Mrs. Teel to drop the knife, never clearly instructed her to stop moving, and never warned that he would shoot her if she failed to comply.  When asked why he did not issue warnings or tell Mrs. Teel to drop the knife or stop moving, Officer Lozada testified that he "was on the radio with dispatch to let them know with the emergency traffic and that she was armed," and "by the time [he] was doing that, [he] looked up" and Mrs. Teel "was right there." Doc. 39-1 at 106.  Officer Lozada admitted that he had the option of fully retreating, leaving the bedroom and even walking down the stairs if Mrs. Teel continued to advance; he chose not to.

Instead, Officer Lozada fired his gun at Mrs. Teel.  It is not clear from the record how far Officer Lozada was from Mrs. Teel at the time he shot her.  Officer Lozada testified to various distances, ranging from 6 to 10 feet.  Because on review of summary judgment orders we must view the facts in the light most favorable to the plaintiff, we accept the longer of these distances.  Officer Lozada could tell his bullet hit Mrs. Teel because her body shuddered.  He testified that she kept walking in his direction at the "same speed," a gradual pace.  *Id.* at 115.  Officer Lozada stepped back again.  Two seconds after he fired the first shot, he fired again.  Two seconds after that, when Mrs. Teel did not stop moving in his direction, Officer Lozada fired at her a third time.  Mrs. Teel fell.  In addition to his gun, Officer Lozada was armed with pepper spray and a taser, yet he used neither. He testified that since he had already shown Mrs. Teel his gun, he was "not going to deescalate to non-lethal."  *Id.* at 124.

Officer Lozada radioed for emergency medical services, telling dispatch that shots had been fired.  Four minutes had passed since Officer Lozada arrived at the residence.  Officer Earman had by that point entered the home; he was at the base of the stairs yelling Officer Lozada's name.  Mrs. Teel's body was lying in the doorway of the bedroom.  Officers and Dr. Teel attempted to render aid, but, approximately nine minutes after he shot her, Mrs. Teel succumbed to her wounds.

The Sheriff's Office's investigation revealed that Officer Lozada had shot Mrs. Teel once in the chest and twice in the abdomen.

Dr. Teel sued Officer Lozada under 42 U.S.C. § 1983 for excessive force and under Florida's Wrongful Death Act. He also sued Sheriff Loar of the Indian River County Sheriff's Office under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for failing to adequately train, supervise, or direct deputy sheriffs in citizen encounters and for violation of the Fourteenth Amendment's right to due process. He sued Sheriff Loar under Florida's Wrongful Death Act as well.

At the close of discovery, Officer Lozada and Sheriff Loar moved for summary judgment. The district court granted their motions. As to the excessive force claim, the district court determined that Officer Lozada's use of deadly force was constitutionally permissible because Mrs. Teel walked toward him armed with a knife and was "relatively close" to Officer Lozada. Doc. 59 at 8. Finding no constitutional violation, the district court did not determine whether Mrs. Teel's clearly established rights were violated. Because the court had found that Officer Lozada's use of force was not excessive, it also granted summary judgment to Officer Lozada and Sheriff Loar on the remaining claims.

This is Dr. Teel's appeal.

## II.    STANDARD OF REVIEW

We review *de novo* a grant of summary judgment based on qualified immunity. *Cantu v. City of Dothan*, No. 18-15071, __ F.3d __, 2020 WL 5270645, at \*8 (11th Cir. Sept. 3, 2020). "When considering a motion for summary judgment, including one asserting qualified immunity, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, they must credit the nonmoving party's version." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (alteration adopted) (internal quotation marks omitted). "[C]redibility determinations and the weighing of evidence are jury functions, not those of a judge." *Id.* (internal quotation marks omitted).

"Summary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *McCullough v. Antolini*, 559 F.3d 1201, 1204 (11th Cir. 2009) (internal quotation marks omitted). Conversely, "[e]ven where the parties agree on the facts, if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Glasscox v. Argo*, 903 F.3d 1207, 1212 (11th Cir. 2018) (internal quotation marks omitted).

### III.    DISCUSSION

"A government official asserting a qualified immunity defense bears the initial burden of showing he was acting within his discretionary authority." *Glasscox*, 903 F.3d at 1213 (internal quotation marks omitted).  After he makes this showing—and here, it is undisputed that Officer Lozada was acting within his discretionary authority—the burden shifts to the plaintiff to show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  Viewing the evidence in the light most favorable to Dr. Teel and drawing all reasonable inferences in his favor, we conclude that Dr. Teel met his burden to show that Officer Lozada violated Mrs. Teel's constitutional right to be free from the excessive use of force.  We also conclude that the law was clearly established at the time of the encounter that the force Officer Lozada employed was excessive.  The district court erred in concluding otherwise.

The district court's adjudication of each of Dr. Teel's remaining claims hinged on its determination that Officer Lozada did not use excessive force. Because we reject that conclusion, we vacate the court's judgment on Dr. Teel's

other claims against Officer Lozada and on his claims against Sheriff Loar and remand for further proceedings.[5]

## A. The Constitutional Violation

The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from the excessive use of force.  U.S. Const. amend. IV, *see Graham v. Connor*, 490 U.S. 386, 394–95 (1989).  "In determining whether [an officer's] force was reasonable, we must determine whether a reasonable officer would believe that this level of force is necessary in the situation at hand."  *Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005) (internal quotation marks omitted).  We ascertain the objective reasonableness of a seizure by balancing the "nature and quality of the intrusion" against the "governmental interest at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

Turning to the nature and quality of the intrusion in this case, we recognize that "[t]he intrusiveness of a seizure by means of deadly force is unmatched."  *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).  Officer Lozada's

---

[5] "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to [our] discretion, . . . to be exercised on the facts of individual cases." *Singleton v. Wulft*, 428 U.S. 106, 121 (1976); *see Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 609 (11th Cir. 1991) (electing not to consider, in the first instance, whether a party had met its summary judgment burden).  Although there are circumstances in which we are "justified in resolving an issue not passed on below," we do not think this is such a case.  *Singleton*, 428 U.S. at 121.

gunshots were fatal. Thus, we weigh heavily the nature and quality of the intrusion and next consider the governmental interest at stake.

*Graham* generally requires that we weigh the governmental interest at stake by examining the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight," keeping in mind that the reasonableness of a "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The use of deadly force is reasonable only if "the suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3.

As in *Mercado*, "[b]ecause this situation does not involve a criminal arrest, our facts do not fit neatly within the *Graham* framework." 407 F.3d at 1157. Indeed, "because Florida does not recognize attempted suicide as a crime, it is impossible for this [C]ourt to measure the 'severity of the crime at issue.'" *Id.* (citation omitted) (quoting *Graham*, 490 U.S. at 396). We have little trouble, then, concluding that this *Graham* factor weighs in favor of Dr. Teel. *See id.* at 1157–58.

We next consider the extent to which Mrs. Teel placed herself or others in danger. *See id.* Mrs. Teel indisputably was a threat to herself, "and Florida law

recognizes a 'compelling interest in preventing suicide.'" *Id.* (quoting *Krischer v. McIver*, 697 So. 2d 97, 103 (Fla. 1997)).  Critically, however, we conclude that there is a genuine dispute as to whether Mrs. Teel posed a significant, immediate threat to Officer Lozada's safety.  Mrs. Teel was armed with a knife and walking in his direction.  These two facts drove the district court to conclude that Officer Lozada's use of force was constitutional.[6]  But the district court failed to sufficiently account for additional material facts.  Officer Lozada understood that Mrs. Teel had not threatened her husband or anyone else.  She did not verbally threaten Officer Lozada and was not pointing the knife at him.  *See Tolan v. Cotton*, 572 U.S. 650, 658 (2014) (rejecting court's determination that plaintiff's admonition to "Get your fucking hands off my mom" was a verbal threat, explaining that "a jury could reasonably infer that his words, in context, did not amount to a statement of intent to inflict harm," especially given testimony that plaintiff "was not screaming").  When he shot her without any warning, Mrs. Teel was 10 feet away.  *See Mercado*, 407 F.3d at 1154–55, 1160–61 (concluding that an officer who fired a Sage Launcher from six feet at a suicidal man pointing a knife at his chest violated the man's clearly established Fourth Amendment right to be free from excessive force); *see also Perez v. Suszczynski*, 809 F.3d 1213, 1220

---

[6] The district court also relied in part on the fact that Mrs. Teel told Officer Lozada "Come on, do it."  Doc. 59 at 8.

(11th Cir. 2016) (explaining that "guns are different when it comes to the level and immediacy of the threat—for instance, a person standing six feet away from an officer with a knife may present a different threat than a person six feet away with a gun"). Her walk was gradual, and she never picked up pace or made any sudden movement.[7] She was diminutive in size.

Perhaps most tellingly, Officer Lozada also was "aware [and conceded] that alternative actions"—retreating into the sitting room or down the stairs to meet up with Officer Earman or using a non-lethal method to subdue Mrs. Teel—"were available means of resolving the situation." *Mercado*, 407 F.3d at 1158. A reasonable officer in his shoes would have been aware of the same alternatives. Yet Officer Lozada did none of these things. His explanation was that since he had drawn his gun—on his way up the stairs, before he had any reason to believe Mrs. Teel was a danger to anyone but herself—he would not de-escalate to less-than-lethal force. When we view the evidence in the light most favorable to Dr. Teel, we conclude that this factor weighs against Officer Lozada.[8]

---

[7] We reject Officer Lozada's argument that Mrs. Teel was approaching him "in a threatening manner" Appellee's Br. at 27, because we are here on an appeal from a summary judgment order and a jury reasonably could conclude otherwise considering the totality of the circumstances. It is true that Officer Lozada testified he was afraid for his life. But Officer Lozada's beliefs about his "life being in danger are just that—his beliefs. They are not 'facts and circumstances' that we may rely on to objectively determine the reasonableness of his actions." *Perez*, 809 F.3d at 1219–20.

[8] *Shaw v. City of Selma*, 884 F.3d 1093 (11th Cir. 2018), which the district court cited in support of its decision, is readily distinguishable. There, officers responded to a 911 call about a

14

Finally, we consider that Mrs. Teel "was not actively resisting arrest, and there is no evidence that [she] struggled with" Officer Lozada. *Id.* at 1157. In *Mercado*, we found that this factor weighed in the plaintiff's favor even though the officer ordered the plaintiff to drop the knife he was aiming at himself. We explained that "[a]rguably, Mercado did not have time to obey [the officer's] order . . . because [the officer] discharged the [weapon] within seconds of making this request." *Id.* Here, Mrs. Teel complied with Officer Lozada's order that she show her hands. She showed him a knife, but Officer Lozada never ordered her to drop it. He never ordered her to stop where she was or put her hands down, despite having 10 seconds to do so while she stood from the bed and paused. And he failed to issue any warning after she began walking in his direction; instead he interrupted his dialogue with her to use his radio. The Fourth Amendment does not require an officer to issue a warning if he lacks time to do so, but a jury could infer that Officer Lozada had time, yet failed, to warn Mrs. Teel. *See Vaughan v. Cox*,

---

man carrying a hatchet. *Id.* at 1096–97. The man was well-known to at least one of the officers for aggressive behavior, and the officers instructed him to drop his weapon at least 26 times. *Id.* at 1097–98. The man was less than five feet from an officer and approaching when the officer shot him once, and he died from his injury. *Id.* Here, viewing the evidence in the list most favorable to Dr. Teel, Officer Lozada had no prior information that Mrs. Teel may be aggressive and yet he shot her three times, without giving her any warning, from more than four times the distance in *Shaw*.

The unpublished decisions the district court cited are also readily distinguishable and, in any event, do not bind us here.

15

343 F.3d 1323, 1330–31 (11th Cir. 2003).  This *Graham* factor also weighs against Officer Lozada.

This case "is not one in which deadly force was used to prevent the escape of a suspect who had committed a violent or otherwise serious crime or who might harm others if not apprehended."  *Cantu*, 2020 WL 5270645, at \*9.  Rather, although Mrs. Teel had committed no crime, and was not an immediate threat to him, Officer Lozada—without issuing a command or warning—shot her three times, killing her.  Viewing the evidence and, critically to this case, drawing all inferences in favor of Dr. Teel, we conclude that "[a]ll of the factors articulated in *Graham* weigh in favor of" Dr. Teel, *Mercado*, 407 F.3d at 1157,[9] and so Officer Lozada used excessive force against Mrs. Teel.  The district court erred in concluding otherwise.

## B.  Clearly Established Law

Officer Lozada argues that even if he used excessive force, he did not violate clearly established law.  Specifically, he argues that no factually similar case

---

[9] Officer Lozada suggests that he had probable cause to take Mrs. Teel into custody for involuntary commitment because of her suicide attempt and that Mrs. Teel resisted his efforts. The same could be said of the plaintiff and officers in *Mercado*, and yet it did not affect our analysis in that case.  We follow *Mercado* here.

clearly established that his conduct was unconstitutional.[10]  Even if he is correct,

summary judgment was unwarranted.

In general, "[t]o determine whether a right was clearly established, we look

to binding decisions of the Supreme Court of the United States, this Court, and the

highest court of the relevant state (here, Florida)."  *Glasscox*, 903 F.3d at 1217.

We ask whether it would be "sufficiently clear that every reasonable official would

understand that what he is doing is unlawful."  *District of Columbia v. Wesby*,

128 S. Ct. 577, 589 (2018) (internal quotation marks omitted).  We undertake this

inquiry "in light of the specific context of the case, not as a broad general

proposition."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal

quotation marks omitted).  "To be clearly established, a legal principle must be

'settled law,' meaning that it is not merely suggested, but rather 'is dictated by

controlling authority or a robust consensus of cases of persuasive authority.'"

*Glasscox*, 903 F.3d at 1217 (quoting *Wesby*, 138 S. Ct. at 589–90).  "Close

similarity of the facts between the cases is 'especially important in the Fourth

Amendment context, where the Court has recognized that it is sometimes difficult

---

[10] Office Lozada also argues that "it was not clearly established that Lozada had to give a warning before using deadly force."  Appellee's Br. at 23.  He is right that an officer is not required to give a warning under all circumstances; however, it *is* clearly established that an officer must give a warning before using deadly force when a warning is feasible.  *See Cantu*, 2020 WL 5270645, at *9 (citing *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985)).  Here, as explained above, a jury could reasonably find that it was feasible for Officer Lozada to give a warning.

17

for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'"  *Cantu*, 2020 WL 5270645, at \*12 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

Importantly, however, "the rule requiring particularized case law to establish clearly the law in excessive force cases" has a "narrow exception," *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000), known as the "obvious clarity" rule, *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009).  Under this exception, "[e]ven without a close fit," a plaintiff "can clear the clearly established law hurdle and defeat a qualified immunity defense by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official."  *Cantu*, 2020 WL 5270645, at \*12 (internal quotation marks omitted).  "To come within the narrow exception, a plaintiff must show that the official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point." *Priester*, 208 F.3d at 926 (alteration adopted) (internal quotation marks omitted). "This test entails determining whether application of the excessive force standard would inevitably lead every reasonable officer in the Defendant['s] position to conclude the force was unlawful."  *Id.* (alterations adopted) (internal quotation marks omitted).

18

Under the unique circumstances here, it would be obviously clear to any reasonable officer that the display of force was excessive. As in *Mercado*, when the evidence is viewed and inferences are drawn in favor of Dr. Teel, "this is one of the cases that lie so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Mercado*, 407 F.3d at 1160 (internal quotation marks omitted). "We have repeatedly held that police officers cannot use force that is wholly unnecessary to any legitimate law enforcement purpose." *Id.* (internal quotation marks omitted).

Officer Lozada's use of force was wholly unnecessary to any legitimate purpose here. As we have explained, Mrs. Teel was not suspected of committing any crime. *See Cantu*, 2020 WL 5270645, at *14. She was suicidal; the purpose of the family's 911 call was to keep her alive, and that should have been the purpose of Officer Lozada's interaction with her given his testimony that he believed her to be a threat only to herself. *See Mercado*, 407 F.3d at 1160. Yet Officer Lozada drew his gun even before he encountered Mrs. Teel, pointed the gun at her before she came near him, and fired at her without warning. Mrs. Teel was not pointing the knife at Officer Lozada or charging at him. By his own testimony she was coming toward him slowly, and he had the opportunity to retreat beyond her reach but simply chose to shoot her instead. Moreover, viewing the

19

evidence in the light most favorable to Dr. Teel, Officer Lozada had time to warn Mrs. Teel, or even to direct her clearly to disarm herself but failed to do so. *See Cantu*, 2020 WL 5270645, at *14. Given these facts, we conclude that Officer Lozada did not need "case law to know that by intentionally shooting [Mrs. Teel three times], he was violating [her] Fourth Amendment rights." *Mercado*, 407 F.3d at 1160.

Officer Lozada notes that he was trained on a "21-foot rule scenario," in which a charging attacker with a knife could cover 21 feet in the time it would take to draw a firearm. Doc. 38-1 at 120–21. He suggests that it cannot be clearly established that the use of a firearm within the range of 21 feet would be excessive force. Even assuming the rationale for this 21-foot rule is accurate, it is inapplicable here. Officer Lozada testified that in the training scenario, the person armed with a knife is "running towards" the officer. *Id.* at 131. Mrs. Teel, who was bleeding profusely from cuts in her arms and neck, was walking gradually— not running—toward Officer Lozada, so any conclusions we could draw about a charging assailant do not apply here.

In this case, "[q]ualified immunity does not apply at the summary judgment stage given the light in which we must view the evidence now." *Cantu*, 2020 WL 5270645, at *14. Although Officer Lozada "may yet prevail on [qualified immunity] grounds at or after trial on a motion for a judgment as a matter of law,"

20

*Cottrell v. Caldwell*, 85 F.3d 1480, 1487 (11th Cir. 1996) (internal quotation marks omitted), Dr. Teel is entitled to a trial on his excessive force claim.

## IV.    CONCLUSION

Taking the facts in the light most favorable to Dr. Teel, a reasonable jury could find that Officer Lozada violated Mrs. Teel's clearly established constitutional right to be free from the excessive use of force.  Officer Lozada therefore is not entitled to summary judgment based on qualified immunity.  We reverse the district court's judgment in this respect.  Our decision on Dr. Teel's Fourth Amendment excessive force claim undermines the district court's reasoning for rejecting his remaining claims, but we decline to address alternative arguments as to those claims in the first instance.  We vacate the district court's judgment as to those claims.  This case is remanded for further proceedings.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**