[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13943

Non-Argument Calendar

_____

MAT S. BAYSA,

Plaintiff-Appellee,

*versus*

SHERIFF OF THE PINELLAS COUNTY SHERIFF'S OFFICE, et al.,

Defendants,

CHARLES REDINGER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:17-cv-00434-WFJ-SPF

_____

Before LAGOA, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Charles Redinger appeals the district court's denial of his motion for summary judgment claiming qualified immunity. He argues that the district court erred in finding that a jury question exists as to whether he used gratuitous force while arresting Mat Baysa.

A district court's order denying a defendant's motion for summary judgment on qualified immunity grounds is immediately appealable unless "the *only* issue on appeal is the sufficiency of the evidence relative to the correctness of the plaintiff's alleged facts." *Perez v. Suszczynski*, 809 F.3d 1213, 1217-18 (11th Cir. 2016). We have jurisdiction where the district court's denial of qualified immunity is based, even in part, on a question of law. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1250 & n.3 (11th Cir. 2013). That includes the determination that an officer was not entitled to qualified immunity under a given set of facts. *Id.* Further, we may resolve any factual issues that are "part and parcel" of the core legal issues. *Id.* (quotation marks omitted).

We review *de novo* the denial of summary judgment based on qualified immunity. *Feliciano*, 707 F.3d at 1247. Summary judgment is appropriate when the record evidence shows that there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). "A genuine factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party." *Smith v. LePage*, 834 F.3d 1285, 1291 (11th Cir. 2016) (cleaned up). "Where there are varying accounts of what happened, the proper standard requires" adopting the account most favorable to the non-movant. *Id.* at 1296. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions. *Strickland v. Norfolk S. Ry. Co.,* 692 F.3d 1151, 1154 (11th Cir. 2012).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that a person acting under the color of state law deprived him of a federal right. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Even then, qualified immunity affords complete protection against § 1983 suits if the official's acts do not violate clearly established constitutional rights of which a reasonable official would have known. *Jackson v. Sauls*, 206 F.3d 1156, 1164 (11th Cir. 2000). To obtain qualified immunity, a defendant must first show that he was performing a discretionary function. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). The burden then shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the right was

clearly established at the time of violation. *Id.* "Under either step, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Smith*, 834 F.3d at 1291 (quotation marks omitted).

Whether a defendant violated a constitutional right in an excessive force case is governed by the "objective reasonableness" standard of the Fourth Amendment. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). The reasonableness of the officer's conduct is judged from the perspective of a reasonable officer, in light of the facts confronting the officer at the time. *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009). In determining whether the force used to effect a particular arrest was "reasonable," we must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quotation marks omitted). Careful consideration must be given to the facts of each case, including: (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically. *Id.* We also consider the severity of the crime, whether the suspect posed an immediate threat, and whether the suspect was resisting or fleeing. *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

Even if an official's conduct is unconstitutional under current law, he is entitled to qualified immunity if the law was not clearly established at the time he acted that his conduct was

21-13943                    Opinion of the Court                    5

unconstitutional.  *Waldron v. Spicher*, 954 F.3d 1297, 1303 (11th Cir. 2020).  A plaintiff can show that a right was clearly established in any of three ways.  *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1343 (11th Cir. 2020).  First, he can show that a materially similar case has already been decided.  *Id.*  Second, he could show that a broader, clearly established principle should control the novel facts in this situation.  *Id.*  Or third, he could show that the conduct so obviously violates the Constitution that prior case law is unnecessary.  *Id.*

In *Post v. City of Fort Lauderdale*, we held that an officer did not use excessive force when he employed a chokehold for five seconds while securing the plaintiff in handcuffs and then pushed the plaintiff against a wall.  7 F.3d 1552, 1559 (11th Cir. 1993).  We explained that, prior to the encounter, a colleague told the officer that the plaintiff had violently resisted during a recent arrest and, therefore, held that a reasonable officer could have concluded that a chokehold was necessary to prevent the plaintiff from becoming violent during the challenged arrest.  *Id.*  Although we noted that force was no longer necessary after the plaintiff was secured in handcuffs, we nonetheless held that pushing the plaintiff against the wall did not constitute excessive force because "the amount of force [the officer] used, even if unnecessary, was [not] enough to [plainly] violate the law."  *Id.* at 1159-60.

By contrast, in *Hadley*, we held that a question of fact existed about whether the officer used excessive force by punching a handcuffed, compliant, unresisting arrestee in the stomach.  526 F.3d at 1330.  There, the undisputed facts showed that Hadley entered a

supermarket high on cocaine and was yelling and running around the store before the officers arrived. *Id.* at 1327. The parties' versions of events diverged upon the officers' arrival, however, with the plaintiff claiming that he complied with demands and did not resist arrest, and the officers claiming that he became irate, swung his arms in a violent manner, and struggled and kicked at them. *Id.* at 1327-28. We held that, under the plaintiff-nonmovant's version of events, the officer's punch constituted excessive force. *Id.* at 1330. We reasoned that the plaintiff "neither resisted arrest nor posed a danger" and, therefore, the officer was "not entitled to use any force at that time." *Id.* We explained that "[o]ur cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Id.* (citation omitted).

Similarly, in *Ingram v. Kubik*, we held that Kubik used excessive force when he slammed an unarmed, unrestrained, non-threatening Ingram headfirst into the ground without warning. 30 F.4th 1241, 1254 (11th Cir. 2022). Deputies had responded to an emergency call and confiscated a knife that Ingram had used in an attempted suicide, but Ingram assured them that he no longer wanted to hurt himself or anyone else and insisted that the deputies either arrest him or leave. *Id.* at 1247-48. Despite repeatedly telling him that he was not under arrest, Kubik picked Ingram up without warning and slammed him headfirst into the ground, causing serious injuries. *Id.* at 1248. Noting that Ingram could rely on the broader, clearly established principle that "gratuitous force . . . constitutes excessive force," we explained that even if Ingram was initially recalcitrant or aggressive, and although he was unhandcuffed,

the deputy used gratuitous force because Ingram did not pose a threat or flight risk. *Id.* at 1252-54 (citing *Hadley*, 526 F.3d at 1330). We concluded that "[o]ur precedents clearly established that [the deputy] could not use grossly disproportionate, gratuitous, and seriously injurious force against a non-resisting, compliant, and docile subject like Ingram," *id.* at 1254, and that those precedents date to at least 2000, *id.* at 1253.

We have rejected officers' claims that they were entitled to qualified immunity because they used only *de minimis* force in arresting the plaintiff, finding that the force used was gratuitous. We have rejected those claims where the force was used after the plaintiff was handcuffed or otherwise subdued. *See Hadley*, 526 F.3d at 1330; *Saunders v. Duke*, 766 F.3d 1262, 1269-70 (11th Cir. 2014) (noting that the *de minimis* force principle "has never been used to immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat"). We also have rejected the claims where the plaintiff was not subdued when the force was used because "the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing but in the course of the investigation and arrest." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 n.33 (11th Cir. 2017) (noting that "injury and force 'are only imperfectly correlated, and it is the latter that ultimately counts'" (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010))); *see Ingram*, 30 F.4th at 1252-54; *see also Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021) ("A plaintiff who suffers only *de minimis* injury does not necessarily lack a claim for excessive force [during arrest] under § 1983.").

Because we assume Baysa's version of the events, a question of law is presented as to whether, under those facts, Redinger violated Baysa's clearly established constitutional rights. Accordingly, we have jurisdiction to review Redinger's interlocutory appeal from the district court's order denying his summary judgment motion claiming qualified immunity.

Here, the district court did not err in denying Redinger's summary judgment motion because there is a jury question as to the accuracy of Redinger's versus Baysa's version of the events prior to the arrest and, accepting Baysa's version as true, the law was clearly established at the time that the force Redinger used was constitutionally excessive. The district court, crediting Baysa's version of the events, assumed:

> he was unthreatening and unresisting. [Redinger] had a colleague present and at least two private security guards, and the offense was minor. According to Baysa, Baysa was gratuitously attacked from behind, beaten ("wailed upon"), "face planted," and choked to unconsciousness by Deputy Redinger after Deputy Redinger told Baysa he was free to leave and Baysa turned and had taken several steps in departing.

Order at 15. Under Baysa's version of the facts, Redinger's use of force would be gratuitous in violation of the clearly established law as determined in *Ingram*, 30 F.4th at 1254, *Stephens*, 852 F.3d at 1328 n.33, and *Hadley*, 526 F.3d at 1330.

21-13943            Opinion of the Court            9

Accordingly, the judgment of the district court is **AFFIRMED.**[1]

---

[1] Baysa's "Motion to vacate Judge Jung's Rulings as to My False Arrest Claims Against Archer and Redinger III" is DENIED.