[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 06, 2010
JOHN LEY
CLERK

No. 10-11129
Non-Argument Calendar

_____

D.C. Docket No. 1:07-cv-21728-ASG

ERLIS JEAN-BAPTISTE,

                                                        Plaintiff-Appellee,

versus

JOSE GUTIERREZ,
Police Officer, Miami-Dade Police Department,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 6, 2010)

Before TJOFLAT, PRYOR and ANDERSON, Circuit Judges.

PRYOR, Circuit Judge:

    This appeal presents the issue whether a police officer is entitled to

qualified immunity for using deadly force against an armed suspect who was lying in wait after having fled from the vicinity of an armed burglary and robbery. Jose Gutierrez, an officer of the Miami-Dade Police Department, shot Erlis Jean-Baptiste repeatedly after Officer Gutierrez encountered Jean-Baptiste following a high-speed car chase and a later chase by foot. Jean-Baptiste sued Officer Gutierrez for allegedly using excessive force during the encounter, and Officer Gutierrez moved for summary judgment based on qualified immunity. The district court denied the motion on the ground that Officer Gutierrez acted unreasonably by continuing to shoot after his first or second bullet caused Jean-Baptiste to fall to the ground. We hold that Officer Gutierrez acted reasonably and is entitled to qualified immunity. We reverse and render judgment in favor of Officer Gutierrez.

## I. BACKGROUND

While on patrol in a marked vehicle, Officer Gutierrez received a report to be on the alert for two black men who were suspected of having committed an armed burglary and robbery and were driving a red Dodge Neon car. Officer Gutierrez later observed a red Neon car traveling at a high rate of speed drive on the shoulder of the road and through a red traffic light. Officer Gutierrez activated his emergency lights and followed the speeding car through several traffic lights

2

until it suddenly turned right and crashed into a wall in the middle of the street. By the time Officer Gutierrez reached the car, Jean-Baptiste and his cohort, Sidney Jean, had fled on foot into a residential area.

Ernesto Perez, who had been servicing an air conditioning unit on the roof of a nearby building, indicated to Officer Gutierrez that the two suspects had fled down the street. Jean-Baptiste and Jean, who were clad in black clothing and wearing black gloves, encountered two police officers who were serving eviction notices. The officers chased Jean-Baptiste and Jean and forced the suspects to backtrack down the same street.

When Officer Gutierrez saw Jean-Baptiste and Jean running toward him, Officer Gutierrez saw that one of them was holding an "unknown object" that Officer Gutierrez thought was a gun. Officer Gutierrez chased Jean-Baptiste and Jean behind a house, where Jean jumped a fence. Officer Gutierrez stopped and saw a shed on his left side.

When he turned to face the shed, Officer Gutierrez saw Jean-Baptiste holding a gun and standing eight to ten feet away. Officer Gutierrez shot continuously 14 bullets, and eight of those bullets struck Jean-Baptiste. Jean-Baptiste suffered six gunshot wounds in his legs and one gunshot wound both in his foot and in his testicles.

After Officer Gutierrez lowered his pistol, he approached Jean-Baptiste and saw that his gun was lying a foot or two away. Officer Gutierrez reported to the police department that "shots had been fired," ejected his empty magazine and reloaded his pistol, and proceeded to secure the area. Jean-Baptiste suffered injuries that confine him to a wheelchair.

In the accounts given by Officer Gutierrez and Jean-Baptiste, there is no dispute that Jean-Baptiste was armed and that Officer Gutierrez fired his pistol without warning, but there are marked disputes about the location of Jean-Baptiste's gun and the reason Officer Gutierrez shot Jean-Baptiste repeatedly. Officer Gutierrez alleged that Jean-Baptiste was pointing a gun at Officer Gutierrez and "signaling" that he would shoot. Officer Gutierrez stated that he fired his pistol continuously because Jean-Baptiste "was still standing pointing [his] gun at me" and "finally went down . . . after my last round." Jean-Baptiste alleged that he did not point his gun at or indicate he would shoot Officer Gutierrez. Jean-Baptiste also alleged that he fell to the ground after being struck in the groin by the first or second bullet, after which Officer Gutierrez "maliciously and sadistically" continued to shoot Jean-Baptiste. Notably, Jean-Baptiste never stated whether he retained or lost control of his gun when he fell.

Officers found a 9 millimeter semi-automatic pistol on the ground near

4

clothes that paramedics had cut off Jean-Baptiste. The safety lock of the semi-automatic pistol had been disengaged, the hammer was cocked partially and, although the chamber of the pistol was empty, the magazine attached to the pistol contained 12 rounds of ammunition. Jean-Baptiste wore an ankle sock that had been penetrated by a "single gunshot" at its "top" and had "a corresponding exit hole in the heel," and police found an "apparent projectile . . . embedded in the heel of [Jean-Baptiste's] right sneaker." Officers also found an empty ammunition magazine that had been ejected from a Heckler & Koch compact 9 millimeter service pistol. Forensic testing confirmed that twelve spent casings discovered in the grass adjacent to the empty magazine had been fired from Officer Gutierrez's service pistol.

Jean-Baptiste was indicted for eight crimes: burglary with assault or battery while armed; kidnapping with a weapon; aggravated battery with a deadly weapon; robbery with a deadly weapon or firearm; armed carjacking; unlawful possession of a firearm by a convicted felon; unlawful possession of a firearm by a violent career criminal; and aggravated assault on Officer Gutierrez. The firearm charges were dismissed before trial. A jury found Jean-Baptiste guilty of burglary, kidnapping, aggravated battery, robbery, and carjacking, but acquitted him of assaulting Officer Gutierrez.

After his trial, Jean-Baptiste filed a complaint that Officer Gutierrez used excessive force during their encounter. Jean-Baptiste alleged that Officer Gutierrez shot him without "provocation or cause." Jean-Baptiste also alleged that he fell to the ground "immediately" after being shot, and Officer Gutierrez acted unreasonably by continuing to shoot until he emptied the magazine of his pistol.

Officer Gutierrez moved for summary judgment based on qualified immunity. Officer Gutierrez argued that he acted reasonably in using deadly force to protect himself and persons near the scene and, in the alternative, his actions did not violate clearly established law. To support his argument, Officer Gutierrez submitted his sworn statements, statements by co-defendant Jean and the police officers who chased Jean and Jean-Baptiste, and crime scene and forensic reports.

Jean-Baptiste conceded that Officer Gutierrez had acted within the scope of his discretionary authority, but Jean-Baptiste argued that issues of material fact precluded summary judgment based on qualified immunity. Jean-Baptiste argued that Officer Gutierrez acted unreasonably by using deadly force, and Jean-Baptiste attached to his response an affidavit stating that he did not point a gun at Officer Gutierrez or set the trigger in a cocked position. Jean-Baptiste also attached to his response the trial testimony of eyewitness Perez, but Perez acknowledged that he could not see Officer Gutierrez fire his pistol and that he "was too far" to see if

6

Jean-Baptiste had anything in his hand when he was shot.

The district court denied Officer Gutierrez's motion for summary judgment on the ground that he acted unreasonably by using deadly force after the need for force had subsided. The district court viewed the evidence in the light most favorable to Jean-Baptiste and found that Officer Gutierrez "maliciously and sadistically shot a non-resisting, non-fleeing [Jean-Baptiste] an additional ten to twelve times from close range <u>after</u> having incapacitated him with an initial shot to the genital-region and <u>after</u> [Jean-Baptiste]'s weapon was no longer within his control." The district court "conclude[d] that even if the initial use of deadly force was constitutionally permissible, the additional ten or twelve shots fired while [Jean-Baptiste] lay unarmed on the ground in an incapacitated state constituted a Fourth Amendment violation by Defendant Gutierrez."

## II. STANDARD OF REVIEW

We review <u>de novo</u> the denial of a motion for summary judgment based on qualified immunity. <u>Townsend v. Jefferson Cnty.</u>, 601 F.3d 1152, 1157 (11th Cir. 2010). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At this juncture, the evidence and all reasonable

7

inferences from that evidence are viewed in the light most favorable to the nonmovant, but those inferences are drawn "only 'to the extent supportable by the record.'" Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8, 127 S. Ct. 1769, 1776 n.8 (2007)).

## III. DISCUSSION

It is well-settled that courts must account "for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989). Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is "'necessary in the situation at hand.'" Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1186 (11th Cir. 2001)). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396, 109 S. Ct. at 1872–73. To determine if the use of force exceeded that which is necessary, courts are required to balance carefully "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

8

governmental interests at stake.'" Id. at 396, 109 S. Ct. at 1871 (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1694, 1699 (1985) (internal quotation marks omitted)).

Any use of force must be reasonable. Id. at 395, 109 S. Ct. at 1871. Reasonableness is dependent on all the circumstances that are relevant to the officer's decision to use deadly force, including the seriousness of the crime, whether the suspect poses an immediate danger to the officer or others, whether the suspect resisted or attempted to evade arrest, and the feasability of providing a warning before employing deadly force. Penley, 605 F.3d at 850. Perspective also is crucial to the analysis: "[t]he only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009); see also Graham, 490 U.S. at 396, 109 S. Ct. at 1872 (explaining that a "standard of reasonableness at the moment applies").

Officer Gutierrez was entitled to qualified immunity if he "'reasonably could have believed that probable cause existed, in light of the information [he] possessed[,]'" to shoot Jean-Baptiste, even if that belief was mistaken. Garczynski, 573 F.3d at 1167 (quoting Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)). Officer Gutierrez's use of force is judged objectively, and he is

9

shielded from liability "unless application of [that] standard would inevitably lead every reasonable officer in [his] position to conclude the force was unlawful." Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993).

Officer Gutierrez found himself in a precarious situation. A suspect of violent crimes who had attempted to elude Officer Gutierrez suddenly confronted Officer Gutierrez. The suspect was armed and posed a threat of serious physical injury to Officer Gutierrez and to citizens in the surrounding residential area. Officer Gutierrez was forced to decide in a matter of seconds whether to employ deadly force.

Officer Gutierrez reasonably perceived the situation as an ambush that required the use of deadly force. Regardless of whether Jean-Baptiste had drawn his gun, Jean-Baptiste's gun was available for ready use, and Gutierrez was not required to wait "and hope[] for the best." Scott, 550 U.S. at 385, 127 S. Ct. at 1778. "[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." Long v. Slaton, 508 F.3d 576, 581 (11th Cir. 2007). Officer Gutierrez's use of deadly force was objectively reasonable.

A police officer is entitled to continue his use of force until a suspect thought to be armed is "fully secured." Crenshaw v. Lister, 556 F.3d 1283, 1293

(11th Cir. 2009). We held in Crenshaw that an officer acted reasonably by using the force exerted by a police canine to detain a suspect until he could be handcuffed. Id. at 1291–93. The suspect was thought to have committed at least one, and possibly two armed robberies and at night had fled from the police in a car, crashed into a patrol car, and then fled on foot. Id. at 1285, 1291. Although the suspect announced he wanted to surrender, he remained hidden in thick foliage. Id. at 1285, 1291–92. The officer reasonably believed that the suspect was armed and was entitled to use the force exerted by the canine to apprehend the suspect, even though the canine bit the suspect 31 times. Id. at 1291–93. The threat to the officer did not end when the suspect decided ostensibly to surrender. Based on the suspect's earlier conduct, "it was objectively reasonable for [the officer] to question the sincerity" of the suspect "who, up to that point, had shown anything but an intention of surrendering[,]" and for the officer to continue to use force until the officer eliminated the possibility that he might be harmed. Id. at 1293.

Officer Gutierrez reasonably responded with deadly force, and he was not required to interrupt a volley of bullets until he knew that Jean-Baptiste had been disarmed. Officer Gutierrez faced more than a possibility of harm. Officer Gutierrez was confronted by a suspect of a dangerous crime who was lying in wait

11

and holding a gun. Until Officer Gutierrez verified that Jean-Baptiste was disarmed, Officer Gutierrez had "no reason to trust that [Jean-Baptiste] would not suddenly attempt to do him harm." Id. at 1293.

The district court found that Officer Gutierrez acted "maliciously and sadistically," but any "subjective beliefs regarding the circumstances [were] irrelevant to the qualified immunity inquiry." Whittier v. Kobayashi, 581 F.3d 1304, 1310 (11th Cir. 2009) (emphasis omitted). The decision about qualified immunity turns on the objective reasonableness of the use of force. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Graham, 490 U.S. at 397, 109 S. Ct. at 1872.

The district court erred in denying Officer Gutierrez's motion for summary judgment based on qualified immunity. There is no dispute that Officer Gutierrez acted within his discretionary authority when he used deadly force to secure Jean-Baptiste, and Jean-Baptiste failed to prove that Officer Gutierrez was not entitled to qualified immunity. See Penley, 605 F.3d at 849. Officer Gutierrez acted reasonably by using deadly force and in so doing did not violate a constitutional right of Jean-Baptiste. Officer Gutierrez was entitled to qualified immunity.

## VI. CONCLUSION

We **REVERSE** the decision to deny Officer Gutierrez qualified immunity,

and we **RENDER** a judgment in favor of Officer Gutierrez.

**REVERSED AND RENDERED.**