[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11708
Non-Argument Calendar
_____

D. C. Docket No. 1:09-cv-00268-WS-M


LEE CURTIS TATE,

Plaintiff-Appellant,

versus

OFFICER ROCKFORD,
OFFICER LANG,
LT. ENGLISH,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(November 19, 2012)


Before MARCUS, EDMONDSON and BLACK, Circuit Judges.

PER CURIAM:

Lee Curtis Tate, a state prisoner proceeding pro se, appeals the grant of summary judgment in favor of defendants in his 42 U.S.C. § 1983 lawsuit.[1]  No reversible error has been shown; we affirm.

In his complaint, Tate raised an Eighth Amendment excessive force claim against Correctional Officer Kerry Rothchild.[2]  According to Tate, on 9 September, 2008, he asked Rothchild for permission to retrieve his prison identification card from the prison shift office.  In response, Rothchild pushed Tate; and after Tate turned to discard a radio that he was holding, Rothchild punched Tate in the head, causing Tate to begin bleeding.  Tate further alleged that Rothchild beat him, threw him to the floor, and handcuffed him before taking him to the shift office.  Captain Shirley Smith arrived at the shift office, interrupted Correctional Lieutenant Steven Lane (who was in the office) before

---

[1] We review de novo the district court's grant of summary judgment.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).  And we view the evidence in the light most favorable to the non-moving party.  Id.

[2] Tate also alleged an Eighth Amendment claim against Correctional Lieutenant Steven Lane for instigation and failure to intervene, and a Fourteenth Amendment due process violation against Correctional Lieutenant James English.  We conclude that Tate abandoned these claims because he fails to argue on appeal that the district court erred in granting summary judgment on these claims. See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 n.4 (11th Cir. 2008) (stating that "issues not raised on appeal are abandoned").

Lane could begin to beat Tate, and ordered Lane to leave the office after Lane repeatedly threatened to kill Tate. Smith then ordered Rothchild and several other officers to escort Tate to the infirmary.[3]

Tate further alleged that Lieutenant Lane was waiting in the hallway on the way to the infirmary and that, after Lane told the officers "y'all know what to do," Rothchild and the officers twisted Tate's handcuffs, pushed him against the wall, and beat him in the head with handcuffs -- causing Tate to bleed profusely. Upon hearing the altercation, Captain Smith ran into the hallway and was knocked to the ground by Rothchild and other unknown officers. After picking herself up from the floor, Smith asked Lane whether he would help stop the beating; but Lane -- according to Tate -- only smiled in response. Smith eventually was able to stop the beating by yelling repeatedly, and Tate was taken to the infirmary and then the hospital.

The district court determined that the record could not support a conclusion that the officers used excessive force in subduing Tate either during the initial confrontation in the prison dormitory or during the altercation in the hallway outside the shift office. The court specifically noted that (1) Rothchild's use of

---

[3] Tate's complaint incorrectly identified Kerry Rothchild as Officer Rockford and Steven Lane as Lieutenant Lang.

force was motivated by a good-faith effort to end Tate's disruptive and violent outburst, (2) Tate's resulting injuries were <u>de minimis</u>, and (3) the prompt administration of medical treatment tempered the severity of the officers' forceful response.  The court stressed that Tate's acts posed a danger to all of the officers and inmates in the area, as well as to Tate himself.  The court concluded that there was no support in the record for Tate's allegation that he was attacked without justification by the officers.

On appeal, Tate argues that the district court erred in granting summary judgment because there were genuine issues of material fact about whether he or Rothchild escalated the initial encounter in the dormitory.  He maintains that the evidence established that it was Rothchild who struck him and created a chaotic and dangerous situation.  He further states that he was handcuffed and not resisting when Rothchild and the other officers assaulted him in the hallway.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A district court must view the evidence and all reasonable inferences therefrom, to the extent supported by the record, "in the light most favorable to the nonmovant." <u>Jean-Baptiste v. Gutierrez</u>, 627 F.3d 816, 820 (11th Cir. 2010).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  In considering an Eighth Amendment excessive force claim, we must consider both a subjective and objective component: (1) whether the "officials act[ed] with a sufficiently culpable state of mind," and (2) "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (internal quotations omitted).  Tate failed to establish the subjective and objective components of an excessive force claim.

Under the subjective part of our analysis of excessive force claims under the Eighth Amendment, force is deemed legitimate in a custodial setting only so long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm."  Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (citation omitted).  Relevant to ascertaining whether force was used "maliciously and sadistically" for the purpose of causing harm are, at least, five factors: (1) the need for the application of force, (2) the relationship between that need and the amount of force used, (3) the extent of the prisoner's injuries, (4) the threat reasonably perceived by the officials on the basis of the facts known to them, and (5) efforts made to temper the severity of the force.  Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007).  When

5

considering these factors, we "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Id. (internal quotation marks, alterations, and citation omitted).  We strive to avoid judgments based on hindsight.

Under the objective component, we consider whether the alleged wrongdoing was "objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8, 112 S.Ct. at 999.  Eighth Amendment claims based on de minimis uses of physical force by prison guards are not cognizable unless they involve force that is "repugnant to the conscience of mankind." Id. at 9-10, 112 S.Ct. at 1000. We have determined that "an injury can be 'objectively, sufficiently serious' [to constitute a constitutional violation] only if there is more than de minimus injury." Boxer v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006).

Here, the district court did not err in concluding that no genuine issues of material fact exist about whether defendants used excessive force in subduing Tate during either of the incidents giving rise to the complaint.  That Tate and Rothchild were involved in a physical altercation in the prison dormitory while Rothchild was the only prison official in an area filled with inmates is undisputed. Tate does not dispute that Rothchild -- in advance of a struggle -- ordered Tate to step away from the gate several times after Tate approached Rothchild about

6

getting Tate's identification card.  After Rothchild attempted to push Tate away, Tate admits that he pushed Rothchild's hand away.  A struggle between Rothchild and Tate resulted: Rothchild's uniform was ripped and bloodied, and Rothchild lost his radio and security keys.

Tate argues that an internal investigation conducted by the Alabama Department of Corrections determined that Rothchild engaged in the unnecessary escalation of violence.  The report also noted that, instead of simply locking the gate to avoid the physical confrontation, Rothchild entered the dormitory alone to confront Tate, resulting in an altercation during which Rothchild did not use just reasonable, necessary physical force.  After an administrative hearing, Rothchild, however, was later found not guilty of applying unnecessary force.  See Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (highlighting that, the standard for showing excessive force in violation of the Constitution is higher than that required by a law enforcement department's administrative policies).  Rothchild was found to have violated some prison policies and procedures.

As the district court observed correctly, Tate's threats, coupled with his refusal to obey Rothchild's commands to be quiet and move away from the gate made use of force necessary, particularly because the altercation occurred in the

7

presence of other inmates and Rothchild was the only officer in the area.  See

Skrtich, 280 F.3d at 1300.

On the later incident in the hallway, the evidence, viewed in the light most

favorable to Tate, shows these circumstances.  Tate was placed in handcuffs while

being escorted to the healthcare unit.[4]  After an officer twisted his handcuffs, Tate

turned around; and an officer pushed Tate against the wall and several officers

beat him.  Rothchild and another officer hit Tate with handcuffs.

Tate argues that the district court did not consider the facts and draw all

reasonable inferences in the light most favorable to him.  Furthermore, in her

declaration -- submitted by defendants -- Captain Smith described that, although

she continuously yelled for the officers (including Rothchild) to stop beating Tate

in the hallway, none of them complied immediately with her orders, even when

Tate ceased resisting.  Our precedent, however, permits the use of force even when

a defendant is not physically resisting.  We have concluded that when a prisoner

created a disturbance by failing to follow a prison guard's instructions and

shouting obscenities, it was not unreasonable for the guard to grab the prisoner by

the throat and shove him against the prison bars.  Bennett v. Parker, 898 F.2d

---

[4] The district court concluded that Tate was not in handcuffs while being escorted to the healthcare unit; Tate, however, alleged in his verified complaint that he was handcuffed.

8

1530, 1533 (11th Cir. 1990).  Indeed, we previously concluded that the use of force sufficient to break bones did not violate the Eighth Amendment under the circumstances even though the prisoner had not offered physical resistance.  See Cockrell, 510 F.3d at 1311.  And the total record shows a complex set of circumstances actually faced the officers.

Tate does not dispute that the hallway was filled with other inmates and that he had been yelling obscenities and threats against the officers.  The officers knew that Tate had been violent and disruptive and that he already had been involved in a recent physical altercation with Rothchild in the prison dormitory.  In the light of Tate's threats and recent prior violent behavior, when Tate turned around in the hallway, the officers might have reasonably believed that force was necessary to ensure his compliance.  The officers likely also recognized that a struggle with Tate could escalate to involve the other inmates in the hallway; and, therefore, they acted with the force necessary to subdue Tate and maintain order and discipline.  See id.  Force was justified.

About the objective part of his excessive force claim, the evidence shows Rothchild applied the amount of force necessary simply to restore order; it was not excessive.  The medical records bely Tate's claim that his injury was not de minimis: briefly stated, he had a laceration on his forehead, several small

9

abrasions and cuts, and a swollen right eye.  It is important that he suffered no broken bones or additional injuries and that nothing evidences that he suffered permanent injury or debilitating pain.  See Boxer, 437 F.3d at 1111. Tate never lost consciousness.  By the way, some of the officers were also injured.

In sum, the district court did not err in concluding that no genuine issue of material fact existed on whether defendants used excessive force in violation of the Eighth Amendment.

AFFIRMED.