[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12178

_____

JEREMY JONES,

Plaintiff-Appellant,

*versus*

DAVID CEINSKI, JR.,
Officer, in his individual capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-00231-AAS

_____

2                    Opinion of the Court                    23-12178

Before WILLIAM PRYOR, Chief Judge, and GRANT and LUCK, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether an officer who choked and punched a subdued driver is entitled to qualified immunity. When Officer David Ceinski stopped Jeremy Jones for a traffic infraction, Jones complied with Ceinski's instructions to exit his car and provide his driver's license and vehicle registration. Jones also volunteered his concealed carry permit and informed the officer that his firearm was inside the car. After Ceinski saw the firearm "[u]nder the driver's seat," while Jones stood in front of the car, Ceinski grabbed his wrist, twisted him, and pushed him against the car. After Jones was subdued, Ceinski choked him until he could not breathe and punched him on the top of his head. Jones filed a complaint against Ceinski, 42 U.S.C. § 1983, alleging that the officer used excessive force in violation of the Fourth Amendment, U.S. CONST. amend IV. The magistrate judge granted Ceinski's motion for summary judgment based on qualified immunity. Because Ceinski's alleged use of force violated Jones's clearly established right to be free from excessive force, we reverse and remand.

## I. BACKGROUND

At about 11:30 PM on August 8, 2020, Officer David Ceinski saw a car driven by Jeremy Jones arrive at an intersection in Sarasota, Florida. While the car was stopped at the intersection, passenger John Thomas opened the door and leaned out of the car. After the traffic light turned green, Jones made a left turn with the

23-12178                Opinion of the Court                3

passenger door open and Thomas's body still partially out of the car. Concerned that someone was trying to exit or being prevented from exiting the car, Ceinski initiated a traffic stop for careless driving of a vehicle. FLA. STAT. § 316.2005.

The parties' agreement on the facts ends there. Because this appeal comes to us on summary judgment, the remaining discussion states the facts in the light most favorable to Jones.

Jones saw Ceinski's overhead lights behind him as he pulled into a restaurant parking lot. He parked and remained in the car until Ceinski approached the driver's side door and asked him to exit the car. Jones complied with the officer's instructions, but because of a severe hand deformity, it took him longer to exit the car than it would for an average person.

Jones was born with "severe osteoporosis" that causes his hands and feet to remain "in a permanent[ly] flexed position." So "[o]rdinary hand tasks" like "opening a car do[or]" take him "much longer than someone without [his] handicap." Jones also stands five-feet-four-inches tall and weighs "slightly over 100 pounds." Jones did not inform Ceinski about his disability, but he asserts that "[i]t would have been clearly obvious to . . . Ceinski as soon as [he] stepped out of the car that [he] was handicapped."

When Jones exited the car, Ceinski asked for his driver's license and vehicle registration. Jones provided both and volunteered his concealed carry permit. After inspecting the permit, Ceinski asked Jones whether there were "any weapons in the

vehicle." Jones replied, "Yes, sir" but refused to tell Ceinski the firearm's specific location. At some point, Ceinski called for backup. Ceinski eventually saw the firearm "[u]nder the driver's seat" while Jones stood in front of the car while the driver's side door was open. In response, Ceinski "grabb[ed] [Jones's] wrist, twist[ed] [his] arm, [and] push[ed] [him] against the car." Jones asserts that he did not reach back toward the car or firearm before Ceinski used force against him.

While pressing Jones against the car, Ceinski "put his arms around [Jones's] neck" and "choke[d] [him] to the point that [he] was unable to breathe." Ceinski told Jones to "[s]top resisting," and Jones responded, "I'm not resisting. You're choking me. I can't breathe. Let me go." Ceinski then "punch[ed] [Jones] on the top of the head with a closed fist" while he "h[e]ld [him] in a chokehold."

At some point, Thomas exited the passenger side of the car and "started screaming at . . . Ceinski to stop choking [Jones]." He also told Ceinski that Jones was "handicapped and could not breathe." Ceinski then released Jones and retrieved the firearm from under the driver's seat. He returned to his police vehicle with the firearm and prepared a traffic citation until backup arrived.

Jones asserts that Ceinski used racial epithets during this incident. In his affidavit, Jones asserts that Ceinski "repeatedly" called him a "handicapped n***a." And he alleges that Ceinski told Thomas to "[b]ack up n***a or I'll kill you." In his deposition, Jones asserted that Ceinski "kept . . . saying," "[h]andicapped n****r, you

are going to die today." He also alleged that Ceinski told Thomas, "You shut up, boy. You wait your turn. You're going to get yours next." And Jones alleged that Ceinski told Thomas, "After I get done beating your handicapped brother, I'm going to beat you next." Ceinski denies making these statements or being verbally hostile toward Jones or Thomas.

When backup arrived, Jones asked for medical assistance because he was experiencing "difficulty breathing and pain in the ribs." Lieutenant Michael Dumer instructed a different deputy to "get an ambulance dispatched right away." When paramedics arrived, Jones complained that "he had neck pain, that the deputy had put him in a choke[h]old, and [that] he wanted to go to the hospital to get evaluated."

Paramedics transported Jones to Sarasota Memorial Hospital. Jones asserts that he was evaluated for a "head contusion, neck pain, rib pai[n] and [a] possible wrist fracture." He alleges that he was discharged "with instructions for a . . . possible fractured wrist" and that he sustained lasting emotional damages, including "posttraumatic stress, anxiety, and night terrors." Jones also asserts that he "later found out [that] the incident cause[d] an umbilical hernia."

Jones sued Ceinski and alleged that Ceinski violated his Fourth Amendment right to be free from excessive force. 42 U.S.C. § 1983. The parties consented to proceed before a magistrate judge, who granted Ceinski summary judgment based on qualified

immunity and ruled that Ceinski's conduct did not violate any clearly established federal right.

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020). "Summary judgment is warranted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (citation and internal quotation marks omitted). "[W]e view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Stryker*, 978 F.3d at 773.

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that the evidence viewed in the light most favorable to Jones could lead a reasonable jury to find that Ceinski violated Jones's Fourth Amendment right to be free from excessive force. Second, we explain that Jones's right was clearly established when Ceinski's challenged conduct occurred.

### A. A Reasonable Jury Could Find that Ceinski Violated Jones's Right.

Jones argues that Ceinski violated his Fourth Amendment right to be free from excessive force when he grabbed his wrist, twisted his arm, pushed him against the car, placed him in a

chokehold, and punched him on the top of the head. Jones does not dispute that Ceinski acted within his discretionary authority, so he "must establish that a reasonable jury could find that [Ceinski] violated [his] constitutional right . . . and that his right was clearly established when [Ceinski] violated it." *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (citation and internal quotation marks omitted).

A claim of excessive force arising from "an arrest, investigatory stop, or other seizure of a free citizen" is reviewed under a standard of "objective reasonableness." *Graham v. Connor*, 490 U.S. 386, 395, 399 (1989) (internal quotation marks omitted). "[T]o determine whether the use of force is objectively reasonable, we carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake under the facts of the particular case." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (citation and internal quotation marks omitted). This fact-intensive inquiry requires us to weigh "the quantum of force employed against these factors—the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015) (citation and internal quotation marks omitted). We also consider "the relationship between the need and amount of force used and the extent of the injury inflicted." *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019) (internal quotation marks omitted).

But we do not "mechanically apply . . . these factors." *Salvato*, 790 F.3d at 1293 (alterations adopted) (citation and internal quotation marks omitted). "In the end[,] we must still slosh our way through the factbound morass of 'reasonableness.'" *Id.* (alteration adopted) (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007)).

Because the reasonableness inquiry is objective, we do not consider an officer's subjective intentions. *Graham*, 490 U.S. at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*; *accord Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1354 (11th Cir. 2015) ("We do not consider whether an officer acted in good faith or sadistically and maliciously."). We may consider an officer's language when evaluating the totality of the circumstances, but "words alone [cannot] make . . . an otherwise proper[]" use of force "unconstitutional under the Fourth Amendment." *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005). Because *Graham v. Connor* instructs that an officer's intentions do not affect the objective reasonableness of force, Ceinski's alleged use of racial epithets throughout the encounter is not dispositive. 490 U.S. at 397. The question remains whether Ceinski's use of force was reasonably proportionate to the need for it. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

When we view the facts in the light most favorable to Jones, we conclude that a reasonable jury could find that Ceinski used excessive force when he choked and punched Jones after he was

subdued. Ceinski stopped Jones for a "noncriminal traffic infraction"—driving with an open passenger door in moving traffic—that warrants a penalty of a thirty-dollar fine. *See* FLA. STAT. §§ 316.2005, 318.18. This infraction is "far from the most serious offense an officer can expect to encounter on patrol." *Sebastian*, 918 F.3d at 1309–10. On many occasions, we have described offenses more serious than the one for which Jones was stopped as "of minor severity" for the *Graham* analysis. *See, e.g.*, *Stryker*, 978 F.3d at 774 (concluding that "a misdemeanor municipal ordinance violation for failing to comply . . . cannot fairly be described as 'severe'"); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) ("The crime of misdemeanor obstruction is a crime of 'minor severity' for which less force is generally appropriate." (citation omitted)). Because "less force is appropriate for a less serious [offense], this factor strongly weighs in [Jones's] favor." *Lee*, 284 F.3d at 1198.

Accepting Jones's version of the facts as true, he also did not "actively resist[] arrest or attempt[] to evade arrest by flight." *Graham*, 490 U.S. at 396. Jones complied with Ceinski's instructions throughout the stop. When Jones saw Ceinski's overhead lights behind him, he parked and remained in his vehicle. He then complied with Ceinski's orders to exit the vehicle and to provide his license and registration. Without prompting, Jones volunteered his concealed carry permit and, when asked, informed Ceinski that a firearm was in his vehicle. Jones denies resisting or threatening Ceinski during the stop. Moreover, Jones "could not have been attempting

to resist or evade arrest because . . . he had no indication that [Ceinski] intended to arrest him." *Stryker*, 978 F.3d at 774–75.

In the light of Jones's minor traffic infraction and his compliance throughout the stop, the reasonableness of Ceinski's force depends on the threat posed by Jones's access to his firearm. When evaluating the reasonableness of an officer's use of force, we have recognized that "guns are different when it comes to the level and immediacy of the threat." *Perez v. Suszczynski*, 809 F.3d 1213, 1220 (11th Cir. 2016). "[A] person standing six feet away from an officer with a knife . . . present[s] a different threat than a person six feet away with a gun." *Id.* So when an officer confronts an armed suspect "in a tense and dangerous situation," the law does not require the officer to "hope for the best" and "wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (alteration adopted) (citations and internal quotation marks omitted). In that circumstance, an "officer is entitled to continue his use of force until a suspect thought to be armed is 'fully secured.'" *Id.* (citation omitted).

The "mere presence of a gun" may not warrant an officer's use of force if the suspect cannot access the firearm. *Perez*, 809 F.3d at 1220. Because "a person who at one time had a gun, but clearly has had the gun removed, is no different than any other unarmed individual," we held in *Perez v. Suszczynski* that the officer used excessive force when he shot a compliant individual whom he had earlier disarmed. *Id.* at 1220–21. We explained that after the firearm had been removed and "any potential threat had been neutralized,"

the use of deadly force was "unnecessary and disproportionate." *Id*. And, in *Sebastian v. Ortiz*, we applied the same reasoning to officers using nonlethal force against a disarmed, nonthreatening suspect. 918 F.3d at 1310. After the suspect in *Sebastian* helped officers recover his lawful firearm, the officer "intentionally tighten[ed]" the suspect's handcuffs to "purposely and wantonly . . . cause pain and further injury." *Id*. at 1305 (internal quotation marks omitted). Because the suspect was disarmed, handcuffed, and the record was free of even the "slightest indication . . . that [the suspect] posed a threat to officer safety or to anyone else," we held that the officer used excessive force. *Id*. at 1310.

Drawing all factual inferences in Jones's favor, we conclude that Jones's access to his firearm during the traffic stop initially posed a risk of harm to Ceinski. When Ceinski first used force against Jones, Ceinski had not yet secured the firearm in Jones's car. And while the firearm sat under the driver's seat, an unrestrained Jones stood in front of the car while the driver's side door was open. That Ceinski was aware Jones had some "handicap" did not remove the perceived threat of an accessible firearm when the information available to Ceinski suggested that Jones could retrieve and operate his firearm. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002) ("We do not use hindsight to judge the acts of police officers; we look at what they knew (or reasonably should have known) at the time of the act."). So Jones's access to the unsecured firearm made it reasonable for Ceinski to use force to restrain Jones and "eliminate[] the possibility that he might be harmed." *Jean-*

*Baptiste*, 627 F.3d at 821–22 ("A police officer is entitled to continue his use of force until a suspect thought to be armed is 'fully secured.'" (citation omitted)).

To be sure, Jones had informed Ceinski of the firearm's presence and remained compliant until this point. But the threat of harm to an officer from an individual—even a compliant one—who has access to a firearm during a late-night traffic stop is not negligible. And we must evaluate the situation "through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision . . . in circumstances where inaction could prove fatal." *Crosby v. Monroe County*, 394 F.3d 1328, 1334 (11th Cir. 2004). The law does not require officers to "hope for the best" and wait for an individual to access his firearm before using force to prevent him from accessing the firearm. *Jean-Baptiste*, 627 F.3d at 821 (alteration adopted) (citation and internal quotation marks omitted). Ceinski could use *some* force to prevent Jones from accessing his firearm.

Although Ceinski was entitled to use some force, we must consider "the need and amount of force used . . . and . . . the extent of the injury inflicted." *Lee*, 284 F.3d at 1198. Based on the threat posed by Jones's access to his firearm, Ceinski's wrist grab, arm twist, and push maneuvers were reasonable uses of force to restrain him. We have held that "[f]or even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls." *Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010). An officer ordinarily does not use excessive force when he pushes

a suspect into a wall to restrain him. *Cf. Jones v. City of Dothan*, 121 F.3d 1456, 1460–61 (11th Cir. 1997) (no clearly established constitutional violation to slam plaintiff against a wall, kick plaintiff's legs apart, and require plaintiff to raise his arms above his head); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556, 1559–60 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994) (no clearly established constitutional violation to arrest unresisting plaintiff for a building code violation by applying a chokehold while affixing handcuffs and pushing him up against a wall). Nor does an officer use excessive force when he uses a "common" arm grab and twist to restrain a suspect. *Rodriguez*, 280 F.3d at 1351 (holding that an officer who grabbed a passenger's arm, twisted it behind his back, and forced it up to below his shoulder blade did not use excessive force, even though the passenger later had his arm amputated because the maneuver aggravated a pre-existing condition). Jones does not assert that Ceinski conducted these maneuvers in an unusually forceful or violent manner. Ceinski was entitled to use these "common" restraint techniques to secure Jones and eliminate the threat posed by his access to a firearm. *Id.*

Unlike the initial force used to restrain Jones, Ceinski's uses of force after he had "fully secured" Jones were excessive and gratuitous. *See Jean-Baptiste*, 627 F.3d at 821 (citation and internal quotation marks omitted). Taking Jones's version of events as true, he was subdued and in Ceinski's control after the wrist grab, twist, and push. Jones stood at five feet four inches, weighed 100 pounds, and suffered from a disability that left his hands "permanent[ly] flexed."

After Ceinski pressed him against the vehicle, Jones did not resist or threaten Ceinski. And, while Ceinski held him in this position, Jones could no longer access the firearm under the driver's seat. At this point, Ceinski had "fully secured" Jones and prevented his access to the firearm. Yet Ceinski "punch[ed] [Jones] on the top of the head with a closed fist" while he "h[e]ld [him] in a chokehold." Because Ceinski was "entitled to continue his use of force" *only* until Jones was "fully secured," *see id.* (citation and internal quotation marks omitted), the additional chokehold and punch were gratuitous and excessive uses of force.

We have held that "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 (11th Cir. 2017) (citation and internal quotation marks omitted). Even a "single punch" may constitute excessive force when an officer uses that force on someone who no longer "pose[s] a danger" to anyone. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). A reasonable jury could find that Ceinski used excessive force when he choked and punched Jones after he was subdued and could not access his firearm.

Ceinski argues that, in the light of Jones's minimal injuries, his use of force was *de minimis*. Because the *de minimis* principle "has never been used to immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat," *Saunders v. Duke*, 766 F.3d 1262, 1269–70 (11th

Cir. 2014), Ceinski's reliance on this doctrine is misplaced. In *Lee v. Ferraro*, we concluded that a woman's lack of injuries after an officer led her "to the back of her car and slammed her head against the trunk *after* she was arrested and secured in handcuffs" did not render the force used *de minimis*. 284 F.3d at 1198–99. As in *Lee*, Ceinski's "objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected [Jones] from suffering more severe physical harm." *Id*. at 1200.

### B. Jones's Right Was Clearly Established.

Jones must also show that his right was clearly established at the time of the alleged violation. *Helm v. Rainbow City*, 989 F.3d 1265, 1272 (11th Cir. 2021). "A right is 'clearly established' if controlling law gave the official 'fair warning' that his conduct violated that right." *Nelson*, 89 F.4th at 1299 (citation omitted). "Fair warning can be established by identifying 'a materially similar case,' appealing to 'a broader, clearly established principle that should control the novel facts' at hand, or establishing that the challenged conduct 'so obviously violates the Constitution that prior case law is unnecessary' to clarify its lawlessness." *Id*. (alteration adopted) (citations omitted).

Jones relies on a broader, controlling principle that his right was clearly established. For a right to be clearly established under this standard, "the principle must be established with obvious clarity by the case law" so that it would have been "apparent" to every reasonable officer that his conduct was unlawful. *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012) (citations and internal

quotation marks omitted). Here, we apply the clear and obvious principle that an officer "violates [a] suspect's rights under the Fourth Amendment" when he uses "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011).

Ceinski had fair warning that his use of a chokehold and punch on Jones after he was subdued, compliant, and could not access his firearm violated Jones's right to be free from excessive force. We have long held that "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Stephens*, 852 F.3d at 1328; *accord Lee*, 284 F.3d at 1198 (concluding that an officer used excessive force when he slammed the driver's head onto the trunk of her car when she was handcuffed, not threatening the officer, and not posing a flight risk); *Hadley*, 526 F.3d at 1330 (concluding that an officer who struck a handcuffed suspect who was "not struggling or resisting" used gratuitous and excessive force). On these facts, "no particularized preexisting case law was necessary for it to be clearly established that" Ceinski's use of a chokehold and punch after Jones was subdued and could not access his firearm "violated [Jones's] constitutional right to be free from the excessive use of force." *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000). Because controlling caselaw placed the illegality of Ceinski's chokehold and punch "beyond debate," Ceinski is not

immune from suit for that conduct. *See Nelson,* 89 F.4th at 1300 (citation and internal quotation marks omitted)

## IV. CONCLUSION

We **REVERSE** the judgment in favor of Ceinski and **RE-MAND** for further proceedings.