**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10552

Non-Argument Calendar

_____

ANTHONY MEDINA,

*Plaintiff-Appellant,*

*versus*

CITY OF DAYTONA BEACH,
a Florida Municipal Corporation,
MARVILLE TUCKER,
in his official capacity and also, individually,
JORGE PAUTH,
in his official capacity and also, individually,
BRENT RAZMEK,
in his official capacity and also, individually,
DARRELL ROLLE,
in his official capacity and also, individually, et al.,

*Defendants-Appellees,*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-02090-RBD-DCI

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRANCH,
Circuit Judges.

PER CURIAM:

Anthony Medina appeals the summary judgment in favor of
the City of Daytona Beach, officers Brent Razmek and Darrell
Rolle, and former officers Marville Tucker and Jorge Pauth, and
against his complaint of excessive force in violation of the Fourth
Amendment, 42 U.S.C. § 1983, and battery, vicarious liability, and
negligence under Florida law. The officers' alleged use of force did
not violate Medina's clearly established right to be free from excessive force. We affirm.

## I. BACKGROUND

Just after midnight on July 14, 2021, a City police officer saw
a car driven by Medina swerving back and forth on a road in Daytona Beach, Florida. The officer initiated a traffic stop for failure to
maintain a single lane and asked Medina several times to roll down
his rear passenger window. When Medina failed to comply, the officer radioed for backup. A backup officer ordered Medina from the
vehicle. Because Medina's eyes were glassy and bloodshot, his
speech was slurred and slow, and his breath smelled of alcohol, officers performed field sobriety exercises, to which he consented.
After he refused to complete the exercises, officers arrested him for

driving under the influence. He agreed to a breath test at the police station, and officers handcuffed him, put him in the back of a patrol vehicle, and drove him to the police station. He became increasingly belligerent on the way to the station.

The parties' agreement on the facts ends there. Because this appeal comes to us on summary judgment, we view the facts in the light most favorable to Medina, unless video evidence "actually proves that [Medina's] version of the facts cannot be true." *See Brooks v. Miller*, 78 F.4th 1267, 1271-72 (11th Cir. 2023).

When Medina arrived at the police station, Officer Tucker, the breath test operator, escorted a handcuffed Medina to a holding area and sat him in a chair. During this time, Medina can be seen and heard on video insulting Tucker, a black man, by calling him racial and homophobic slurs, and Tucker can be seen and heard taunting Medina in return. At one point, Medina stood and Tucker ordered him to sit down, grabbed him by the neck, pushed him into the chair, and put his hands around Medina's neck for a few seconds. The taunting between the two men continued, and Medina told Tucker that Tucker's mother could "suck [Medina's] dick," to which Tucker told Medina to "pull it out" and wiggled his tongue at Medina while Medina continued to call Tucker homophobic slurs.

Medina dared Tucker to "touch me you fucking faggot," and Tucker tapped his foot on Medina's knee. Medina continued to taunt Tucker and stood up again. Tucker told him to sit down twice, and when Medina refused, Tucker grabbed Medina by the

neck and pushed his head down while other officers pushed Medina into the chair. Tucker held Medina's head between Medina's knees for several seconds while Medina was seated, while Medina told Tucker to "suck my dick," and Tucker replied, "suck it yourself." After Tucker took his hand off Medina's head and started to walk away, Medina shouted at Tucker that he was a "piece of shit," got up again, and ignored repeated instructions to sit down. Although he eventually sat down, this pattern continued.

Medina refused to take the breath test and Officers Tucker, Pauth, Rolle, and Razmek led him out of the holding area in handcuffs to the sally port for transport to the county jail. In the sally port, Medina confronted Tucker and called him "a pussy." Tucker then grabbed Medina by the throat, pushed him into the patrol vehicle several feet from where they stood, and held his throat for several seconds before Pauth separated them. Medina continued to insult Tucker while officers held him against the patrol car and uncuffed his wrists from behind his back and re-cuffed them in front.

Medina attempted to kick Tucker in the groin seconds after he was re-cuffed. Tucker lunged at Medina and he, Pauth, and Rolle pushed him to the ground. Tucker and Pauth punched Medina multiple times while Rolle attempted to grab Medina's feet. The officers held Medina on the ground while Razmek went to retrieve a set of ankle cuffs to restrain him.

The officers eventually loaded Medina into a transport van while he continued to insult them and ignore their instructions. At one point, while in the transport van, Medina appeared

nonresponsive. Medina was transported to the county jail and was medically evaluated and cleared. He suffered a forehead cut, bloody nose, allegedly deformed chin, post-traumatic stress disorder, and "believe[d]" at one point that was concussed and unconscious.

Medina sued the City, Tucker, Pauth, Razmek, and Rolle in state court, and the City removed the action to the district court. He alleged that Tucker, Pauth, Razmek, and Rolle battered him, in violation of Florida law, and violated his constitutional right to be free from excessive force. 42 U.S.C. § 1983. He also alleged that the City was negligent and vicariously liable for the officers' actions.

The district court granted the officers summary judgment based on qualified immunity. It ruled that the force Tucker and Pauth used was objectively reasonable and that Razmek and Rolle were immune from suit for their alleged failure to intervene. It also ruled that because the officers did not use excessive force against Medina, his battery claims against the officers and vicarious liability claims against the City failed. Finally, it ruled that Medina's negligence claim against the City failed because he did not allege damages that stemmed from the City's alleged failure to provide medical care.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*. *Jones v. Ceinski*, 136 F.4th 1057, 1061 (11th Cir. 2025). "Summary judgment is warranted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." *Id.* (citation and internal quotation marks omitted). "[W]e view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Id.* (alteration adopted) (citation and internal quotation marks omitted).

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that the evidence viewed in the light most favorable to Medina could not lead a reasonable jury to find that the officers violated Medina's Fourth Amendment right to be free from excessive force. Second, we explain that Medina's state-law claims fail because the force used against him was not excessive, and he failed to allege damages that were proximately caused by the officers' act of leaving him in a transport van without medical aid.

### A.  A Reasonable Jury Could Not Find that Officers Violated Medina's Right.

Medina argues that Officer Tucker violated his Fourth Amendment right to be free from excessive force through three acts: forcing his head down by the back of his neck, grabbing his throat and pushing him against the patrol car, and punching him after he was pushed to the ground. He argues that Officer Pauth violated his Fourth Amendment right to be free from excessive force when he also punched him after he had been pushed to the ground. He argues that Officers Razmek and Rolle are liable for their failure to intervene while Tucker and Pauth punched him. And he argues that the City is liable for the actions of its officers. Medina does not dispute that the officers were acting within their

discretionary authority, so he "must establish that a reasonable jury could find that [the officers] violated [his] constitutional right . . . and that his right was clearly established when [the officers] violated it." *Id.* at 1061-62 (citation and internal quotation marks omitted).

"A claim of excessive force arising from . . . '[a] seizure of a free citizen' is reviewed under a standard of 'objective reasonableness.'" *Id.* at 1062 (quoting *Graham v., Connor*, 490 U.S. 386, 395, 399 (1989)). Whether the use of force is objectively reasonable is a "fact-intensive inquiry." *Id.* We must weigh "the quantum of force employed against these factors—the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Id.* (internal quotation marks omitted). We do not "mechanically apply . . . these factors." *Id.* (internal quotation marks omitted). We consider "the relationship between the need and amount of force used and the extent of the injury inflicted." *Id.*

"We do not consider an officer's subjective intentions." *Id.* (citing *Graham*, 490 U.S. at 397). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397. "We may consider an officer's language when evaluating the totality of the circumstances." *Jones*, 136 F.4th at 1062. But "words alone [cannot] make . . . an otherwise proper[] use of force

unconstitutional under the Fourth Amendment." *Id.* (internal quotation marks omitted).

Because Officer Tucker's intentions do not affect the objective reasonableness inquiry, that he may have provoked Medina throughout parts of the encounter, although unprofessional, is not dispositive. *Graham*, 490 U.S. at 397. The question is "whether [Tucker's and Pauth's] use of force was reasonably proportionate to the need for it." *Jones*, 136 F.4th at 1062. "[A] police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Id.* at 1065.

When we view the facts in the light most favorable to Medina, we conclude that a reasonable jury could not find that Officer Tucker used excessive force during either the incident in the holding area or the sally port. Officer Tucker's initial use of force occurred in the holding area after Medina failed to comply with two instructions to sit down. After the second refusal, Tucker forced Medina's head between his knees, while Medina continued to insult him. The entire encounter, from the initial grab until Tucker released Medina's head, lasted approximately 31 seconds. Because Medina failed to comply, Tucker had the authority to use some degree of force to subdue him, and the force used here was "reasonably proportionate to the need for it." *See id.* at 1062, 1065.

A reasonable jury also could not find that Tucker used excessive force when he grabbed Medina's throat and pushed him against the patrol car in the sally port. This use of force occurred

after Medina continued to insult Tucker and attempted to kick him in the groin. The time from when Tucker lunged at Medina, grabbed his throat, pushed him against the patrol car, and took him to the ground to prevent further kicking lasted a couple of seconds. As in the holding area, Tucker had the authority to use some degree of force to subdue Medina, and this force was also "reasonably proportionate to the need for it." *See id.*

A reasonable jury also could not find that Officers Tucker and Pauth used excessive force when they punched Medina after he had been taken to the ground. Medina continued to struggle with the officers, and Tucker and Pauth punched him for about 16 seconds while Rolle attempted to keep his legs still. After Rolle had control of Medina's legs, Tucker and Pauth stopped punching him—even before Razmek placed him in ankle cuffs. *See Graham*, 490 U.S. at 396 (explaining that courts must consider "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"). Like the other uses of force against Medina, this use of force was also "reasonably proportionate to the need for it." *See id.*

Finally, a reasonable jury could not find that Officers Razmek and Rolle were liable for any alleged failure to intervene. *See Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) ("Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed"). And

because no constitutional violation occurred, a reasonable jury could not find that the City was liable for the actions of its officers.

### B.  Medina's State-Law Claims Fail.

Medina makes three arguments about his claims under state law. He argues that the officers' use of force constituted a battery, for which the officers and the City should be held liable. He also argues that the City should be held liable for assault based on Officer Tucker's act of touching Medina's knee with his foot. And he argues that the City is liable because its officers left him in the transport van without medical aid.

Medina's arguments fail. First, a claim of battery under Florida law is similar to a claim of excessive force under the Fourth Amendment. "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996). For the same reasons that the force used against Medina was not excessive under the Fourth Amendment, it was not excessive under Florida law. Second, the City was not vicariously liable for either battery or assault. *See Gabor v. Remington Lodging & Hosp., LLC*, 413 So. 3d 261, 264 (Fla. Dist. Ct. App. 2025) ("'[I]f the employee is not liable the employer is not liable.'" (quoting *Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954))). Finally, because Medina did not allege any injuries that stemmed from the officers' act of leaving him in a transport van without medical aid, the City was not liable for any alleged negligence. *See Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007) ("To maintain an action

25-10552                Opinion of the Court                11

for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages.").

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the City, Tucker, Pauth, Razmek, and Rolle.